# EXHIBIT A

Fill in this information to identify the case:

Debtor 1 __Byron Earl Walker__

Debtor 2
(Spouse, if filing) _____

United States Bankruptcy Court for the: Northern District of Texas

Case number __25-40278__

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

PlainsCapital Bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

PlainsCapital Bank
Name

325 N. St.Paul St., Suite 800
Number      Street

Dallas          TX          75201
City          State          ZIP Code

Contact phone 956-388-8791

Contact email paul.nauschutz@plainscapital.com

Where should payments to the creditor be sent? (if different)

_____
Name

_____
Number      Street

_____
City          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 7  1  0  0 |

| | |
|---|---|
| 7. How much is the claim? | $ _____341,889.28_. Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Money loaned |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes.   The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☑ Other. Describe:   Vehicles and other property<br><br>**Basis for perfection:**   Titles and UCC<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:   $ 543,000.00<br>Amount of the claim that is secured:   $ 341,889.28<br><br>Amount of the claim that is unsecured: $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:   $ 0.00<br><br>Annual Interest Rate (when case was filed) 8.50 %<br>☐ Fixed<br>☑ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/03/2025
                   MM / DD / YYYY

Signature _____

Print the name of the person who is completing and signing this claim:

| Name | Jeff Flenar | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Executive Vice President | | |
| Company | PlainsCapital Bank | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 325 N. St. Paul St., Suite 800 | | |
| | Number          Street | | |
| | Dallas | TX | 75201 |
| | City | State | ZIP Code |
| Contact phone | 214-252-4022 | Email jeff.flenar@plainscapital.com | |

Official Form 410                              Proof of Claim                              page 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| IN RE: | § | |
| | § | CASE NO. 25-40278 |
| BYRON EARL WALKER | § | |
| | § | |
| DEBTOR. | § | CHAPTER 13 |

### ATTACHMENT TO PROOF OF CLAIM FOR PLAINSCAPITAL BANK

**Amount of Claim as of Petition Date:   $341,889.28**

This amount consists of the following:

| As of Petition Date | |
| --- | --- |
| $339,012.71 | Principal |
| $  2,876.57 | Interest |
| $341,889.28 | *Amount Owed as of Petition Date* |
| | |

1. PlainsCapital Bank ("PlainsCapital") reserves all rights to amend, clarify, modify, update or supplement this Proof of Claim at any time and in any respect, including without limitation to assert additional claims and requests for payment or additional grounds for PlainsCapital's claim or file separate proof of claims. By virtue of the filing of this Proof of Claim, PlainsCapital does not waive, and hereby expressly reserves, PlainsCapital's rights to pursue any and all claims and requests for payment, including but not limited to, the claim and request for payment described herein against the borrower, any guarantors, or Debtor based on the facts and circumstances giving rise to the claim asserted in this Proof of Claim or any other alternative legal theories. PlainsCapital does not waive any of its rights to any and all such claims by not ascribing a specific dollar amount thereto at this time.

2. All reservations of rights and benefits set forth in this Proof of Claim apply to the indebtedness and claim set forth herein.

3. This Proof of Claim is not subject to any setoff or counterclaim.

4. The execution and filing of this Proof of Claim is not and shall not be deemed or construed as: (a) a waiver or release of PlainsCapital's rights against any person, entity, or property, which may be liable for all or any part of the claims asserted herein, including but not limited to borrowers, guarantors or co-debtors; (b) a consent by PlainsCapital to the jurisdiction or venue of the Bankruptcy Court with respect to proceedings, if any, commenced in the Debtor's Chapter 13 case against or otherwise involving PlainsCapital; (c) a waiver or release of PlainsCapital's right to trial by jury in any proceeding as to any and all matters triable herein, whether or not the same be designed legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute of the United States

Constitution; (d) a waiver or release of PlainsCapital's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (e) a waiver of the right to move or to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in the Debtor's Chapter 13 case against or otherwise involving PlainsCapital; (f) an election of remedies; or (g) a waiver or limitation of any procedural or substantive rights or defenses to any claim that may be asserted against PlainsCapital by the Debtor, any official committee or unsecured creditors, trustee or examiner appointed in this case or any subsequent case, or any other party.

5. PlainsCapital reserves its right to recover all post-petition interest, expenses, and attorneys' fees related to this claim (and the underlying promissory note) as provided by the loan documents and applicable law, including 11 U.S.C. §506(b).

6. The value attributed to the collateral is derived solely from the Debtor's Schedules filed in this case and other information available to PlainsCapital and is subject to amendment. PlainsCapital does not intend to be bound by such value, nor shall it be binding on PlainsCapital in any proceeding in this bankruptcy case or any other proceeding, whether at law or in equity.

**COMMERCIAL PROMISSORY NOTE**
Officer: Ronnie Hansen



**PlainsCapital** Bank

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | MATURITY DATE | PROCESSOR | OFFICER |
|---|---|---|---|---|---|
| ▬▬▬ | January 19, 2024 | $375,000.00 | January 19, 2026 | LL | Ronnie Hansen |

LOAN PURPOSE: Consolidate business debt, with remaining funds used to finish out horse facility

**BORROWER INFORMATION**
BYRON E WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

NOTE. This Commercial Promissory Note will be referred to in this document as the "Note."
LENDER. "Lender" means PlainsCapital Bank whose address is 1100 East Hwy 377, Suite 101, Granbury, Texas 76048, its successors and assigns.
BORROWER. "Borrower" means each person or legal entity who signs this Note.
PROMISE TO PAY. For value received, receipt of which is hereby acknowledged, on demand by Lender, or if no demand is made, on or before January 19, 2026 (the "Maturity Date"), the Borrower promises to pay the principal amount of Three Hundred Seventy-five Thousand and 00/100 Dollars ($375,000.00) and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.
PAYMENT SCHEDULE. This Note will be paid according to the following schedule: 23 consecutive payments of principal and interest beginning on February 19, 2024 and continuing on the same day of each month thereafter. The initial payment will be in the amount of $6,155.20. This amount may change on March 19, 2024 and every month thereafter. An increase in the interest rate will result in a higher payment amount. One final balloon payment shall be due on the Maturity Date, unless demanded earlier, in an amount equal to the then unpaid principal and accrued and unpaid interest.
APPLICATION OF PAYMENTS. All payments received by the Lender from the Borrower for application to this Note may be applied to the Borrower's obligations under this Note in such order as determined by the Lender.
INTEREST.
　Interest Rate and Scheduled Payment Changes. Interest will begin to accrue on January 19, 2024 . The initial variable interest rate on this Note will be 9.500 % per annum. This interest rate may change on February 19, 2024 and on the same day of each month thereafter. Each date on which the interest rate may change is called the "Change Date." Prior to each Change Date, Lender will calculate the new interest rate based on the base rate on corporate loans posted by at least 70% of the 10 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate in effect on the Change Date (the "Index") plus 1.000 percentage points (the "Margin"). The interest rate will never be greater than 18.000% or less than 7.500%.
　Index Replacement. If the Index is Unavailable on the Change Date, the interest rate will be calculated using a "Replacement Index" and a new commercially reasonable "Replacement Margin."
　　Index Unavailability. The Index is considered "Unavailable" when one or more of the following events occurs:
　　　(1) A public statement by or on behalf of the administrator of the Index, or supervisor thereof or a relevant governmental authority, that (a) the administrator will cease publishing the Index and there is no successor administrator that will continue publication of the Index, or (b) that the Index has been discontinued, is no longer reliable or representative, or may no longer be used;
　　　(2) The Index is not published by the administrator of the Index for five consecutive business days without advance announcement that the disruption is temporary; or
　　　(3) Lender reasonably determines that the Index no longer reflects the Lender's cost of funding.
　　Replacement Index and Replacement Margin. Lender will select the Replacement Index and determine an associated Replacement Margin. Lender shall make a reasonable effort to select a Replacement Index and a Replacement Margin that, when added together, Lender reasonably expects will minimize any change to the cost of the loan. The Replacement Index shall be (a) a replacement Index selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) a comparable successor or alternative Index and Margin that is, at such time, broadly viewed as acceptable market practice for similar loans in lieu of the Index, or (c) a successor or alternative Index rate as Lender may reasonably determine. The Replacement Margin shall be determined by utilizing a margin adjustment method which is, at such time, (a) selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) broadly viewed as acceptable market practice, or (c) any other method as the Lender may reasonably determine.
Compliance with Law. Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law, and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law.
Accrual Method. Interest on this Note is calculated on an Actual/360 day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.
Default Rate. The unpaid balance of this loan after the Maturity Date, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to 18.000% per annum.
LATE PAYMENT CHARGE. If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 5.000% of the amount of the regularly scheduled payment then past due.
PREPAYMENT PENALTY. This Note may be prepaid, in full or in part, at any time, without penalty.
SECURITY TO NOTE. Security for this Note is granted pursuant to the following security document(s):
　• Assignment of Life Insurance Policy with a face value of $125,000.00, dated January 19, 2024 evidencing security interest in Life Insurance Policy #EQD006020-00 Issued by HDI GLOBAL INSURANCE COMPANY.
　• Assignment of Life Insurance Policy with a face value of $200,000.00, dated January 19, 2024 evidencing security interest in Life Insurance Policy #BI400001199-00 Issued by GLENCAR INSURANCE COMPANY.
　• Assignment of Life Insurance Policy with a face value of $75,000.00, dated January 19, 2024 evidencing security interest in Life Insurance Policy #EQD006020-00 Issued by HDI GLOBAL INSURANCE COMPANY.
　• Security Agreement dated January 19, 2024 evidencing security interest in 2022 RAM 3500 DUALLY PICKUP VIN 3C63RRMLXNG195059, 2023 LAKOTA C8313SR VIN 58JGX3H23P1000455.
　• Security Agreement dated January 19, 2024 evidencing security interest in Three Cutting Horses (pregnant mares): (1) LEXUS SMOOTH - 2015 Sorrel Mare AQHA #5727284, (2) WR THISPLAYGUNSMART - 2016 Sorrel Mare AQHA #5764745, and (3)

CSi

BAR NOTHING DANCER - 2018 Mare AQHA #5757228, ACCOUNTS RECEIVABLE, GENERAL INTANGIBLES, FARM EQUIPMENT.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**PAYABLE ON DEMAND.** This is a demand note. Payment is due upon the earlier to occur of (a) Lender's demand or (b) the Maturity Date.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced hereby this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Note shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**GOVERNING LAW.** This Note is governed by the laws of the state of Texas except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Borrower agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Note or the relationship between the parties. Included in the fees that Lender may recover from Borrower are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth hereunder or in any of the Related Documents.

**ADDITIONAL PROVISIONS.**
ANY CHANGES IN THE INTEREST RATE MAY RESULT IN A PAYMENT CHANGE.

If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of the agreement and may not be amended or modified by oral agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or limitations of Sections 19(a), 32 or 35 of Regulation Z or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007. This Loan Agreement is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under the Loan and to confirm your lien status on any Property. Time is of the essence.

ORIGINAL

**COMMERCIAL SECURITY AGREEMENT**
Officer: Ronnie Hansen



**PlainsCapital** Bank

| LOAN NUMBER | AGREEMENT DATE | PROCESSOR | OFFICER |
|---|---|---|---|
| ▓▓▓▓ | January 19, 2024 | LL | Ronnie Hansen |

**BORROWER INFORMATION**
BYRON E WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

RECEIVED

JUN 2 0 2024

A. MARTINEZ

**COLLATERAL OWNER INFORMATION**

BYRON E WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

CELENA JILL WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

**AGREEMENT.** "Agreement" means this Commercial Security Agreement.

**BORROWER.** "Borrower" means BYRON E WALKER.

**DEBTOR.** "Debtor" means BYRON E WALKER.

**LENDER.** "Lender" means PlainsCapital Bank whose address is 1100 East Hwy 377, Suite 101, Granbury, Texas 76048, its successors and assigns.

**SECURITY INTEREST GRANT.** Debtor, in consideration of the Obligations, hereby agrees to all of the terms of this Agreement and further hereby specifically grants Lender a continuing security interest in the Collateral. Debtor further grants Lender a security interest in the proceeds of said Collateral; the proceeds of hazard insurance and eminent domain or condemnation awards involving the Collateral; all products of, substitutions, replacements, and accessions to such Collateral or interests therein; any and all deposits or other sums at any time credited by or due from Lender to Debtor; and any and all instruments, documents, policies, and certificates of insurance, securities, goods, accounts receivable, choses in action, chattel paper, cash, property, and the proceeds thereof (whether or not the same are Collateral or proceeds thereof hereunder), owned by Debtor or in which Debtor has an interest which are now or at any time hereafter in possession or control of Lender, or in transit by mail or carrier to or from Lender, or in possession of any third party acting on Lender's behalf, without regard to whether Lender received the same in pledge, for safekeeping, as agent or otherwise, or whether Lender has conditionally released the same. Debtor's grant of a continuing security interest in the Collateral secures to Lender the payment of all Obligations, including all renewals and extensions thereof, whether heretofore, now, or hereafter existing or arising and howsoever incurred or evidenced, whether primary, secondary, contingent, or otherwise.

**DESCRIPTION OF COLLATERAL.** The collateral covered by this Agreement (the "Collateral") is all of the Debtor's property described below which the Debtor now owns or may hereafter acquire or create and all proceeds and products thereof, whether tangible or intangible, including proceeds of insurance and which may include, but shall not be limited to, any items listed on any schedule or list attached hereto.

Titled Vehicle. "Titled Vehicle" consists of any and all vehicle(s) and all additions and accessions to the vehicle(s), and any replacements and substitutions of the vehicle(s). It also includes all documents of title related to the vehicle(s) as well as all products, rents, and proceeds of the vehicle(s).

TITLED VEHICLE DESCRIPTION:
- 2023 LAKOTA C8313SR, VIN 58JGX3I123P1000455

**OBLIGATIONS.** "Obligations" means any and all of Borrower's obligations to Lender, whether they arise under this Agreement or the note, loan agreement, guaranty, or other evidence of debt executed in connection with this Agreement, or under any other mortgage, trust deed, deed of trust, security deed, security agreement, note, lease, instrument, contract, document, or other similar writing heretofore, now, or hereafter executed by the Borrower to Lender, including any renewals, extensions and modifications thereof, and including oral agreements and obligations arising by operation of law. The Obligations include all interest and all of Lender's costs, fees, and expenses recoverable pursuant to this Agreement, any other agreement between the parties, or under applicable law, including all such costs, fees, and expenses that may arise after the filing of any petition by or against Borrower or Debtor under the Bankruptcy Code, irrespective of whether the Obligations do not accrue because of an automatic stay.

**CROSS-COLLATERALIZATION.** Debtor agrees that any security interest provided in Collateral under this Agreement or any Collateral provided in connection with any and all other indebtedness of Debtor to Lender, whether or not such indebtedness is related by class or claim and whether or not contemplated by the parties at the time of executing each evidence of indebtedness, shall act as Collateral for all said indebtedness. This cross-collateralization provision shall not apply to any Collateral that is/are household goods or a principal dwelling.

**FUTURE ADVANCES AND AFTER-ACQUIRED PROPERTY.** Future advances may be made at any time by the Lender under this Agreement to the extent allowed by law. The security interest grant contained in this Agreement also applies to any Collateral of the type(s) identified in this Agreement that the Debtor acquires after this Agreement is executed, except that no security interest attaches to after-acquired consumer goods unless the Debtor acquires rights in such goods within 10 days of Lender giving value. In anticipation of future advances by Lender, the Debtor authorizes Lender to file any necessary financing statements to protect Lender's security interest.

**RELATED DOCUMENTS.** "Related Documents" means all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents, and any other documents or agreements executed in connection with this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**GENERAL REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Debtor represents, warrants, and covenants the following:

Authority. Debtor has the power and authority to execute this Agreement and the Related Documents and to bind Debtor to the obligations created in this Agreement and the Related Documents. The execution of this Agreement will not create any breach of any other agreement to which the Debtor is or may become a party. Debtor has obtained all licenses, permits, and the like which Debtor is required by law to file or obtain, and all such taxes and fees for such licenses and permits required to be paid have been paid in full.

Debtor's Name. Debtor will not conduct business under any name other than that given at the beginning of this Agreement, nor change, nor reorganize the type of business entity as described, except upon the prior written approval of Lender, in which event the Debtor agrees to execute any documentation of whatsoever character or nature required by Lender for filing or recording, at the Debtor's expense, before such change occurs. Debtor has or will provide to Lender Debtor's full legal name as well as a copy of Debtor's driver's license, if one has been issued to Debtor, or if no driver's license has been issued to Debtor, Debtor will provide another form of identification issued by a governmental authority which is acceptable to Lender. Debtor will not change Debtor's legal name without providing Lender with at least 30 days' notice of the change.

© 2004-2022 Compliance Systems, LLC 24451761-8314cc7 - 2022 168.1          Page 1 of 1          www.compliancesystems.com

**Business Address.** Debtor will keep all records of account, documents, evidence of title, and all other documentation regarding its business and the Collateral at the address specified at the beginning of this Agreement, unless notice thereof is given to Lender at least ten (10) days prior to the change of any address for the keeping of such records.

**Title.** Debtor has or will acquire free and clear title to all of the Collateral, unless otherwise provided herein. All of the Collateral exists and is or will be actual property of the Debtor.

**No Encumbrances or Transfer of Collateral.** Debtor will not allow or permit any lien, security interest, adverse claim, charge, or encumbrance of any kind against the Collateral or any part thereof without Lender's prior written consent. Except as otherwise provided under this Agreement, Debtor will not, without Lender's prior written consent, sell assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein nor will Debtor offer to sell, assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein.

**Priority.** The security interest granted to Lender shall be a first security interest unless Lender specifically agrees otherwise, and Debtor will defend the same against the claims and demands of all persons.

**Facilitation of Security Interest.** Debtor will fully cooperate in placing, perfecting, and maintaining Lender's lien or security interest against or in the Collateral and Debtor agrees to take whatever actions requested by Lender to perfect and continue Lender's security interest in the Collateral. Debtor specifically authorizes the Lender to file the necessary financing statements to perfect the Lender's security interest in the Collateral.

**Location of Collateral.** All of the Collateral is located in the state where the Debtor is located, as identified in this Agreement, unless otherwise certified to and agreed to by Lender, or, alternatively, is in possession of the Lender. Debtor will not remove or change the location of any Collateral without Lender's prior written consent and will allow the Lender to inspect the Collateral upon reasonable request.

**Use of Collateral.** Debtor will use the Collateral only in the conduct of its own business, in a careful and proper manner. Debtor will not use the Collateral or permit it to be used for any unlawful purpose.

**Good Condition and Repair.** Debtor will, at all times, maintain the Collateral in good condition and repair.

**Financial Information and Filing.** All financial information and statements delivered by Debtor to Lender have been prepared in accordance with generally accepted accounting principles consistently applied, and fully and fairly present the financial condition of Debtor and there has been no material adverse change in Debtor's business, Collateral, or condition, either financial or otherwise, since Debtor last submitted any financial information to Lender. Debtor has filed all federal, state and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Debtor has made reasonable provision for these types of payments that are accrued but not yet payable. Debtor does not know of any deficiency or additional assessment not disclosed in the Debtor's books and records.

**No Litigation.** There are no existing or pending suits or proceedings, including set-off or counterclaim, which are threatened or pending against Debtor which may result in any material adverse change in Debtor's financial condition or which might materially affect any of the Collateral. Debtor will promptly notify Lender in writing of all threatened and actual litigation, governmental proceedings, default, and every other occurrence that may have a material adverse effect on Debtor's business, financial condition, or the Collateral.

**No Misrepresentations.** All representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**INSURANCE.** Debtor is required to: (1) keep the collateral insured against damage in the amount equal to or exceeding the Obligations; (2) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and (3) name Lender as the person to be paid under the policy in the event of a loss. Debtor must, if required by Lender, deliver to Lender a copy of the policy and proof of the payment of premiums. If Debtor fails to meet any requirement listed in this section, the creditor may obtain collateral protection insurance on behalf of Debtor at the Debtor's expense.

Lender is granted a security interest in the proceeds of such insurance and may apply such proceeds as it may receive toward the payment of the Obligations, whether or not due, in such order as the Lender may in its sole discretion determine. Debtor agrees to maintain, at its own expense, public liability and property damage insurance upon all its other property, to provide such policies in such form as the Lender may approve. All policies of insurance shall provide for a minimum 10 days' written notice of cancellation to Lender. Debtor agrees that Lender is authorized to act as attorney for Debtor in obtaining, adjusting, settling, and canceling such insurance and endorsing any drafts or instruments issued or connected with such insurance. Debtor specifically authorizes Lender to disclose information obtained in conjunction with this Agreement and from policies of insurance to prospective insurers of the Collateral. Lender may, but is not required to, make payment or obtain insurance policies on the Collateral without waiving any default under this Agreement. All costs incurred by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges thereby incurred, shall become a part of the Obligations and shall be payable on demand. If requested by Lender, all insurance policies shall include a lender's loss payable endorsement.

**ADDITIONAL COLLATERAL.** In the event that Lender should, at any time, determine that the Collateral or Lender's security interest in the Collateral is impaired, insufficient, or has declined or may decline in value, or if Lender should deem that payment of the Obligations is insecure, time being of the very essence, then Lender may require; and Debtor agrees to furnish, additional Collateral that is satisfactory to Lender. Lender shall provide notice as provided for in this Agreement to Debtor regarding additional Collateral. Lender's request for additional Collateral shall not affect any other subsequent right of Lender to request additional Collateral.

**FINANCING STATEMENT(S) AND LIEN PERFECTION.** Lender is authorized to file a conforming financing statement or statements to perfect its security interest in the Collateral, as provided in Revised Article 9, Uniform Commercial Code - Secured Transactions. Debtor agrees to provide such information, supplements, and other documents as Lender may from time to time require to supplement or amend such financing statement filings, in order to comply with applicable state or federal law and to preserve and protect the Lender's rights in the Collateral. The Debtor further grants the Lender a power of attorney to execute any and all documents necessary for the Lender to perfect or maintain perfection of its security interest in the Collateral, and to change or correct any error on any financing statement or any other document necessary for proper placement of a lien on any Collateral which is subject to this Agreement.

**LANDLORD'S WAIVER.** Upon request, Debtor shall furnish to Lender, in a form and upon such terms as are acceptable to Lender, a landlord's waiver of all liens with respect to any Collateral covered by this Agreement that is or may be located upon leased premises.

**RELATIONSHIP TO OTHER AGREEMENTS.** This Agreement and the security interests (and pledges and assignments, as applicable) herein granted are in addition to (and not in substitution, novation or discharge of) any and all prior or contemporaneous security agreements, security interest, pledges, assignments, mortgages, liens, rights, titles, or other interests in favor of Lender or assigned to Lender by others in connection with the Obligations. All rights and remedies of Lender in all such agreements are cumulative.

**TAXES, LIENS, ETC.** The Debtor agrees to pay all taxes, levies, judgments, assessments, and charges of any nature whatsoever relating to the Collateral or to the Debtor's business. If the Debtor fails to pay such taxes or other charges, the Lender, at its sole discretion, may pay such charges on behalf of the Debtor; and all sums so dispensed by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges relating thereto, shall become a part of the Obligations and shall be payable on demand. So long as this Agreement continues to be a lien on ` charges relating thereto, shall become a part of the Obligations and shall be payable on demand.

**ENVIRONMENTAL HAZARDS.** Debtor certifies that the Collateral has never been, and so long as this Agreement continues to be a lien on the Collateral, never will be used in violation of any local, state or federal environmental laws, statutes or regulations or used for the generation, storage, manufacture, transportation, disposal, treatment, release or threatened release of any hazardous substances and Debtor will immediately notify Lender in writing of any assertion made by any party to the contrary.

DEBTOR INDEMNIFIES AND HOLDS LENDER AND LENDER'S DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS HARMLESS FROM ANY LIABILITY OR EXPENSE OF WHATSOEVER NATURE, INCLUDING REASONABLE ATTORNEYS' FEES, INCURRED DIRECTLY OR INDIRECTLY AS A RESULT OF DEBTOR'S INVOLVEMENT WITH HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCES AS MAY BE DEFINED OR REGULATED AS SUCH UNDER ANY LOCAL, STATE OR FEDERAL LAW OR REGULATION OR DEBTOR'S OWNERSHIP OR OCCUPATION OF ANY REAL ESTATE UPON WHICH ANY HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCE IS OR WAS PREVIOUSLY LOCATED.

**PROTECTION OF COLLATERAL.** Debtor agrees that Lender may, at Lender's sole option, whether before or after any event of default, and without prior notice to Debtor, take the following actions to protect Lender's interest in the Collateral: (a) pay for the maintenance, preservation, repair, improvement, or testing of the Collateral; (b) pay any filing, recording, registration, licensing, certification, or other fees and charges related to the Collateral; or (c) take any other action to preserve and protect the Collateral or Lender's rights and remedies under this Agreement, as Lender may deem necessary or appropriate from time to time. Debtor agrees that Lender is not obligated and has no duty whatsoever to take the foregoing actions. Debtor further agrees to reimburse Lender promptly upon demand for any payment made or any expenses incurred by Lender pursuant to this authorization. Payments and expenditures made by Lender under this authorization shall constitute additional Obligations, shall be secured by this Agreement, and shall bear interest thereon from the date incurred at the maximum rate of interest, including any default rate, if one is provided, as set forth in the notes secured by this obligation.

**INFORMATION AND REPORTING.** The Debtor agrees to supply to the Lender such financial and other information concerning its affairs and the status of any of its assets as the Lender, from time to time, may reasonably request. The Debtor further agrees to permit the Lender, its employees, and agents, to have access to the Collateral for the purpose of inspecting it, together with all of the Debtor's other physical assets, if any, and to permit the Lender, from time to time, to verify Accounts, if any, as well as to inspect, copy, and to examine the books, records, and files of the Debtor.

**DEFAULT.** The occurrence of any of the following events shall constitute a default of this Agreement: (a) the non-payment, when due (whether by acceleration of maturity or otherwise), of any amount payable on any of the Obligations or any extension or renewal thereof; (b) the failure to perform any agreement of the Debtor contained herein or in any other agreement Debtor has or may have with Lender; (c) the publication of any statement, representation, or warranty, whether written or oral, by the Debtor to the Lender, which at any time is untrue in any respect as of the date made; (d) the condition that any Debtor becomes insolvent or unable to pay debts as they mature, or makes an assignment for the benefit of the Debtor's creditors, or conveys substantially all of its assets, or in the event of any proceedings instituted by or against any Debtor alleging that such Debtor is insolvent or unable to pay debts as they mature (failure to pay being conclusive evidence of inability to pay); (e) Debtor makes application for appointment of a receiver or any other legal custodian, or in the event that a petition of any kind is filed under the Federal Bankruptcy Code by or against such Debtor and the resulting proceeding is not discharged within thirty days after filing; (f) the entry of any judgment against any Debtor, or the issue of any order of attachment, execution, sequestration, claim and delivery, or other order in the nature of judgment against any Debtor, or the issue of any order of attachment, execution, sequestration, claim and delivery, or other order in the nature of a writ levied against the Collateral; (g) the death of any Debtor who is a natural person, or of any partner of any Debtor that is a partnership; (h) the dissolution, liquidation, suspension of normal business, termination of existence, business failure, merger, or consolidation or transfer of a substantial part of the property of any Debtor which is a corporation, limited liability company, partnership, or other non-individual business entity; (i) the Collateral or any part of the Collateral declines in value in excess of normal wear, tear, and depreciation or becomes, in the judgment of Lender, impaired, unsatisfactory, or insufficient in character or value, including but not limited to the filing of a competing financing statement; breach of warranty that the Debtor is the owner of the Collateral free and clear of any encumbrances (other than those encumbrances disclosed by Debtor or otherwise made known to Lender, and which were acceptable to Lender at the time); sale of the Collateral (except in the ordinary course of business) without Lender's express written consent; failure to keep the Collateral insured as provided herein; failure to allow Lender to inspect the Collateral upon demand or at reasonable time; failure to make prompt payment of taxes on the Collateral; loss, theft, substantial damage, or destruction of the Collateral; and, when Collateral includes inventory, accounts, chattel paper, or instruments, failure of account debtors to pay their obligations in due course; or (j) the Lender in good faith, believes the Debtor's ability to repay the Debtor's indebtedness secured by this Agreement, any Collateral, or the Lender's ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

**REMEDY.** Upon the occurrence of an event of default, Lender, at its option, shall be entitled to exercise any one or more of the remedies described in this Agreement, in all documents evidencing the Obligations, in any other agreements executed by or delivered by Debtor for benefit of Lender, in any third-party security agreement, mortgage, pledge, or guaranty relating to the Obligations, in the Uniform Commercial Code of the state of Texas, and all remedies at law and equity, all of which shall be deemed cumulative. The Debtor agrees that, whenever a default exists, all Obligations may (notwithstanding any provision in any other agreement), at the sole option and discretion of the Lender and without demand or notice of any kind, be declared, and thereupon immediately shall become due and payable; and the Lender may exercise, from time to time, any rights and remedies, including the right to immediate possession of the Collateral, available to it under applicable law. The Debtor agrees, in the case of default, to assemble, at its own expense, all Collateral at a convenient place acceptable to the Lender. The Lender shall, in the event of any default, have the right to take possession of and remove the Collateral, with or without process of law, and in doing so, may peacefully enter any premises where the Collateral may be located for such purpose. Debtor waives any right that Debtor may have, in such instance, to a judicial hearing prior to such retaking. The Lender shall have the right to hold any property then in or upon said Collateral at the time of repossession not covered by the security agreement until return is demanded in writing by Debtor. The Lender may sell, lease, or otherwise dispose of the Collateral, by public or private proceedings, for cash or credit, without assumption of credit risk. Unless the Collateral is perishable or threatens to decline speedily in value or of a type customarily sold on a recognized market, Lender will send Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition will be made. Any notification of intended disposition of the Collateral by the Lender shall be deemed to be reasonable and proper if sent United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means to the Debtor at least ten (10) days before such disposition, and addressed to the Debtor either at the address shown herein or at any other address provided to Lender in writing for the purpose of providing notice. Proceeds received by Lender from disposition of the Collateral may be applied toward Lender's expenses and other obligations in such order or manner as Lender may elect. Debtor shall be entitled to any surplus if one results after lawful application of the proceeds. If the proceeds from a sale of the Collateral are insufficient to extinguish the Obligations, the parties obligated thereon shall be liable for a deficiency. Lender shall have the right, whether before or after default, to collect and receipt for, compound, compromise, and settle, and give releases, discharges, and acquittances with respect to, any and all amounts owed by any person or entity with respect to the Collateral. Lender may remedy any default and may waive any default without waiving the default remedied and without waiving any other prior or subsequent default. The rights and remedies of the Lender are cumulative, and the exercise of any one or more of the rights or remedies shall not be deemed an election of rights or remedies or a waiver of any other right or remedy.

**EXERCISE OF LENDER'S RIGHTS.** Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, or under any other document executed by Debtor to the Lender in connection herewith, shall not operate as a waiver thereof, and no single or partial exercise thereof or any other power, privilege, or right shall preclude other or further exercise thereof. The waiver by the Lender of any default of the Debtor shall not constitute a waiver of subsequent default.

**CONTINUING AGREEMENT.** This is a continuing agreement and the security interest (and pledge and assignment, as applicable) hereby granted and all of the terms and provisions of this Agreement shall be deemed a continuing agreement and shall remain in full force and effect until the Obligations are paid in full. In the event that Lender should take additional Collateral, or enter into other security agreements, mortgages, guarantees, assignments, or similar documents with respect to the Obligations, or should Lender enter into other such agreements with respect to other obligations of Debtor, such agreements shall not discharge this Agreement, which shall be construed as cumulative and continuing and not alternative and exclusive.

Any attempted revocation or termination shall only be effective if explicitly confirmed in a signed writing issued by Lender to such effect and shall in no way impair or affect any transactions entered into or rights created or liabilities incurred or arising prior to such revocation or termination, as to which this Agreement shall be truly operative until same are repaid and discharged in full. Unless otherwise required by applicable law. Lender shall be under no obligation to issue a termination statement or similar document unless Debtor requests same in writing.

and providing further, that all Obligations have been repaid and discharged in full and there are no commitments to make advances, incur any obligations, or otherwise give value.

**ABSENCE OF CONDITIONS OF LIABILITY.** This Agreement is unconditional. Lender shall not be required to exhaust its remedies against Debtor, other collateral, guarantors, or any third party, or pursue any other remedies within Lender's power before being entitled to exercise its remedies hereunder. Lender's rights to the Collateral shall not be altered by the lack of validity or enforceability of the Obligations against Debtor, and this Agreement shall be fully enforceable irrespective of any counterclaim which the Debtor may assert on the underlying debt and notwithstanding any stay, modification, discharge, or extension of Debtor's Obligation arising by virtue of Debtor's insolvency, bankruptcy, or reorganization, whether occurring with or without Lender's consent.

**NOTICES.** Any notice or demand given by Lender to Debtor in connection with this Agreement, the Collateral, or the Obligations, shall be deemed given and effective upon deposit in the United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means addressed to Debtor at the address designated at the beginning of this Agreement, or such other address as Debtor may provide to Lender in writing from time to time for such purposes. Actual notice to Debtor shall always be effective no matter how such notice is given or received.

**WAIVERS.** Debtor waives notice of Lender's acceptance of this Agreement, defenses based on suretyship, and to the fullest extent permitted by law, any defense arising as a result of any election by Lender under the Bankruptcy Code or the Uniform Commercial Code. Debtor and any maker, endorser, guarantor, surety, third-party pledgor, and other party executing this Agreement that is liable in any capacity with respect to the Obligations hereby waive demand, notice of intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, and any other similar notice whatsoever. Debtor further waives any defense arising by reason of a disability or other defense of any third party or by reason of the cessation from any cause whatsoever of the liability of any third party.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Agreement shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; but, in the event any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity and shall be severed from the rest of this Agreement without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefit of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Debtor.

**ASSIGNABILITY.** Lender may assign, pledge, or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the Obligations, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Debtor may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Debtor agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Agreement or the relationship between the parties. Included in the fees that Lender may recover from Debtor are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the Collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth in any of the Related Documents.

**GOVERNING LAW.** This Agreement has been delivered in the State of Texas and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**COUNTERPARTS.** This Agreement may be executed by the parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of all obligations of Debtor.

**INTERPRETATION AND CONSTRUCTION.** Except as otherwise defined in this Agreement, all terms herein shall have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Texas. Any ambiguities between this Agreement and any loan agreement executed by the Debtor in conjunction with this Agreement shall be resolved using the provisions of the loan agreement, to the extent necessary to eliminate any such ambiguity.

**RELEASE OF LIABILITY.** Debtor releases Lender from any liability which might otherwise exist for any act or omission of Lender related to the collection of any debt secured by this Agreement or the disposal of any Collateral, except for the Lender's willful misconduct.

By signing this Agreement, Debtor acknowledges reading, understanding, and agreeing to all its provisions and receipt of a copy hereof.

_____  1/19/24
BYRON E WALKER                   Date
Individually

_____  6/7/24
CELENA JILL WALKER               Date

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer; Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

014009 - 015917

**PLAINSCAPITAL BANK**
**PO BOX 93600**
**LUBBOCK, TX 79493**

RECEIVED
JUL 0 1 2024
D. EMERY

↓ DETACH HERE ↓



# TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

17771 5129

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 58JGX3H23P1000455 | 2023 | LAKO | CT |

TITLE/DOCUMENT NUMBER   DATE TITLE ISSUED
**1113014545209044 06/19/2024**

MODEL   MFG. CAPACITY IN TONS   WEIGHT **10800**   LICENSE NUMBER **B608843**   ODOMETER READING

PREVIOUS OWNER
**COOLHORSE AMARILLO TX**

OWNER
**BYRON EARL WALKER**
**CELENA JILL WALKER**
**1206 DELMARVA CT**
**GRANBURY, TX 76048**

REMARK(S)

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE

DATE OF LIEN   1ST LIENHOLDER
**01/19/2024 PLAINSCAPITAL BANK**
            **PO BOX 93600**
            **LUBBOCK, TX 79493**

1ST LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN   2ND LIENHOLDER
2ND LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN   3RD LIENHOLDER
3RD LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

**RIGHTS OF SURVIVORSHIP AGREEMENT**
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OR TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED BY THE AGREEMENT THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE _____ DATE
SIGNATURE _____ DATE
SIGNATURE _____ DATE

DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification online** at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**     17971529

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)
Date of Sale

Signature of Seller/Agent — Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)
Date of Sale     Dealer No.
Dealer's Name

Agent's Signature — Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)
Date of Sale     Dealer No.
Dealer's Name

Agent's Signature — Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)
Date of Sale     Dealer No.
Dealer's Name

Agent's Signature — Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

**LIEN**
LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

**HYPOTHECATION AGREEMENT**
**SECURITY AGREEMENT-PLEDGE**
Officer: Ronnie Hansen

**PlainsCapital Bank**

| LOAN NUMBER | AGREEMENT DATE | PROCESSOR | OFFICER |
|---|---|---|---|
| | January 19, 2024 | Ll. | Ronnie Hansen |

**PLEDGOR INFORMATION**
WALKER CUTTING HORSES, LLC
1206 DELMARVA CT
GRANBURY, TX 76048

Type of Business Entity: Limited Liability Company
State of Organization/Formation: Texas

**BORROWER INFORMATION**
BYRON E WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

Type of Entity: Individual
State of Residence: Texas

**HYPOTHECATION AGREEMENT.** This Hypothecation Agreement will be referred to in this document as the "Agreement."

**LENDER.** "Lender" means PlainsCapital Bank whose address is 1100 East Hwy 377, Suite 101, Granbury, Texas 76048, its successors and assigns.

**BORROWER.** For purposes of this Agreement, the term "Borrower" refers to any party, who with respect to an obligation secured by a security interest in the Collateral, (i) owes payment or other performance of the obligation, (ii) has provided property other than the collateral to secure payment or other performance of the obligation, or (iii) is otherwise accountable in whole or in part for payment or other performance of the obligation.

**HYPOTHECATOR.** "Pledgor" or "Hypothecator" means each person who signs this Agreement

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with either the Loans or this Hypothecation Agreement, or both, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Hypothecation Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**COLLATERAL.** On the date above, and in consideration of loans granted by Lender to Borrower, the Hypothecator hereby assigns the Lender all its right, title and interest to, and grants Lender a security interest in, the property ("Collateral") described in the following documents:

- Security Agreement dated January 19, 2024 evidencing security interest in Three Cutting Horses (pregnant mares): (1) LEXUS SMOOTH - 2015 Sorrel Mare AQHA #5727284, (2) WR THISPLAYGUNSMART - 2016 Sorrel Mare AQHA #5764745, and (3) BAR NOTHING DANCER - 2018 Mare AQHA #5757228.
- Security Agreement dated January 19, 2024 evidencing security interest in ACCOUNTS RECEIVABLE.
- Security Agreement dated January 19, 2024 evidencing security interest in GENERAL INTANGIBLES.
- Security Agreement dated January 19, 2024 evidencing security interest in FARM EQUIPMENT.
- Assignment of Life Insurance Policy with a cash value of $0.00 and a face value of $125,000.00, dated January 19, 2024 evidencing security interest in Life Insurance Policy #EQD006020-00 issued by HDI GLOBAL INSURANCE COMPANY.
- Assignment of Life Insurance Policy with a cash value of $0.00 and a face value of $75,000.00, dated January 19, 2024 evidencing security interest in Life Insurance Policy #EQD006020-00 issued by HDI GLOBAL INSURANCE COMPANY.

**SCOPE OF PLEDGE.** The pledge and security interest granted herein shall secure Lender for indebtedness of the Borrower to Lender, whether direct or indirect, liquidated or contingent, and whether or not evidenced by a writing, such as a promissory note or loan agreement. All such liability is sometimes referred to as the "Loans" in this Agreement.

**CONSIDERATION.** The Pledgor hereby warrants and represents that the pledge and security interest in the Collateral arising out of this Agreement has been given and granted to induce the Lender to extend, or to continue to extend, credit accommodations to the Borrower.

**WARRANTIES.** Pledgor hereby warrants that the description of Pledgor's type of business as set forth above is a true and accurate description of said business, and that Pledgor will not change, alter, or modify Pledgor's type of business or state of organization/formation without prior written notice to Lender, at the address of the Lender set forth above, or at such other address as Lender shall provide to Pledgor from time to time for purpose of providing Notice.

**LENDER ACTIONS.** Pledgor agrees to any extensions of time for payment of any Loans of the Borrower by Lender, without limit as to the number or the aggregate period of such extensions, and that Lender may make or consent to any type of modification or renewal with respect to any Loans of Borrower. Pledgor further agrees that Lender may make or consent to any substitution of collateral securing Loans of Borrower and may release any or all collateral securing such Loans.

**DEFAULT.** In the event of a default in any agreement herein, or in the event of a default in the terms of any of the Related Documents, time being of the very essence, the Lender may, without notice to or demand upon either the Borrower or Pledgor except any notice and cure period required by law, dispose of the Collateral as provided under the terms of the applicable Related Documents and in conformity with applicable law. The Pledgor hereby expressly waives the right to request the Lender to marshal any other collateral security it may have received from the Borrower or any third party to secure Borrower's Loans from the Lender. Pledgor hereby appoints any officer of the Lender as its true and lawful attorney-in-fact to endorse, or otherwise execute any of the Collateral as such attorney-in-fact may deem appropriate to dispose of the Collateral.

**NOTICES.** Any notice by Lender to the Borrower or Pledgor shall be deemed proper if sent by first class United States mail to the address of the Borrower and/or Pledgor shown above, unless either the Borrower or Pledgor shall have notified the Lender in writing to send notices to another address.

**FORBEARANCES.** No waiver or indulgence of the Lender in enforcing the terms of this Agreement or any other agreement between the Lender and the Borrower and/or the Pledgor, shall be considered a waiver of future performance of this Agreement or any such other agreement in strict accordance with their terms, and Lender shall not be required to give either the Borrower or Pledgor notice of its intent to enforce such terms in the future.

**BINDING EFFECT AND GOVERNING LAW.** This Agreement shall be binding upon the parties' heirs, successors and assigns. This Agreement is governed by the laws of the state of Texas.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Agreement shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Agreement is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Agreement without invalidating the remainder of either the affected provision or this Agreement.

**GENERAL WAIVERS.** Pledgor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Agreement, and all notice of the creation, extension of, or accrual of any of the Loans; (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration in connection with the Loans or any other obligations now existing or hereafter owing; (c) any requirement that Lender proceed against or pursue any other collateral securing or any other party responsible for some or all of the Loans; (d) any requirement that Lender pursue or exhaust any other remedy available to Lender; (e) any right to request that Lender marshal any other collateral; (f) failure to protect, preserve, or resort to any collateral; and (g) any and all defenses that could be asserted by Pledgor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, Lender liability, unenforceability of any loan document, accord and satisfaction, usury, or the extension, renewal, and modification of the Loans.

Pledgor to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to any agreements between Pledgor and Lender, to limit Pledgor's liability to Lender, including all defenses of suretyship.

Pledgor hereby expressly waives any and all rights pursuant to Rule 31 of the Texas Rules of Civil Procedure, Section 17.001 and Chapter 43 of the Texas Civil Practice and Remedies Code, and all amendments, recodifications or supplements to any such laws.

**HEADINGS.** The headings preceding text in this Agreement are for the general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading.

By signing this Agreement, Pledgor acknowledges reading, understanding, and agreeing to all its provisions.

WALKER CUTTING HORSES, LLC

By: BYRON E WALKER                    Date    1/19/24
Its: MEMBER

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 5999 - PLAINSCAPITAL

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

96983308

TXTX

File with: Secretary of State, TX
SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

Lien Solutions
Representation of filing

This filing is Completed
File Number : 00240002712432
File Date   : 19-Jan-2024

Byron E. Walker
State UCC
RECEIVED
JAN 2 2 2024
J. ROPER

2

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1 DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Walker Cutting Horses, LLC | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| OR 1b. INDIVIDUAL'S SURNAME | | | | |
| | CITY | | STATE POSTAL CODE | COUNTRY |
| 1c. MAILING ADDRESS | | | TX 76048 | USA |
| 1208 Delmarva Ct | Granbury | | | |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| OR 2b. INDIVIDUAL'S SURNAME | | | | |
| | CITY | | STATE POSTAL CODE | COUNTRY |
| 2c. MAILING ADDRESS | | | | |

**3 SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PLAINSCAPITAL BANK | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| OR 3b. INDIVIDUAL'S SURNAME | | | | |
| | CITY | | STATE POSTAL CODE | COUNTRY |
| 3c. MAILING ADDRESS | LUBBOCK | | TX 79493 | USA |
| PO BOX 93600 | | | | |

**4 COLLATERAL:** This financing statement covers the following collateral

THE COLLATERAL SHALL CONSIST OF ALL OF THE FOLLOWING DESCRIBED PROPERTY AND DEBTOR'S RIGHT, TITLE AND INTEREST IN SUCH PROPERTY WHETHER NOW OR HEREAFTER EXISTING OR NOW OWNED OR HEREAFTER ACQUIRED BY DEBTOR AND WHERESOEVER LOCATED;
ALL ACCOUNTS, EQUIPMENT, FURNITURE, GENERAL INTANGIBLES, INCLUDING BUT NOT LIMITED TO: Three Cutting Horses (pregnant mares): (1) LEXUS SMOOTH - 2015 Sorrel Mare AQHA #5727284, (2) WR THISPLAYGUNSMART - 2016 Sorrel Mare AQHA #5764745, and (3) BAR NOTHING DANCER - 2016 Mare AQHA #5757228
ALL FARM PRODUCTS, INCLUDING BUT NOT LIMITED TO: /
ALL FARM SUPPLIES INCLUDING BUT NOT LIMITED TO,
ALL
AND OTHER CROPS GROWN, GROWING OR TO BE GROWN IN
COUNTY (IES) IN THE STATE OF TEXAS
AND ELSEWHERE INCLUDING BUT NOT LIMITED, ANY CROPS GROWN, GROWING OR TO BE GROWN;
ALL
AND OTHER LIVESTOCK AND THE BORN OR UNBORN OFFSPRING THEREOF INCLUDING BUT NOT LIMITED TO ANY LIVESTOCK
DESCRIBED IN ATTACHMENT A AND INCORPORATED BY THIS REFERENCE; AND
ALL INVENTORY, EQUIPMENT, ACCOUNTS, GENERAL INTANGILBLES AND DOCUMENTS
AND OTHER PRODUCTS FROM THE FOREGOING CROPS AND LIVESTOCK IN THEIR UNMANUFACTURED OR MANUFACTURED STATES.

**5** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box
☐ Agricultural Lien ☐ Non-UCC Filing

**7 ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |  |  |
|---|---|---|
| Walker Cutting Horses, LLC |  |  |

OR

| 9b. INDIVIDUAL'S SURNAME |  |  |
|---|---|---|
| FIRST PERSONAL NAME |  |  |
| ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME |  |  |  |  |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |  |  |  |  |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |  |  |  | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME   Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |  | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME |  |  |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
ALL PAYMENTS OR CONSIDERATION OF ANY KIND OR NATURE, OR THE RIGHT TO RECEIVE THE SAME, WHICH DEBTOR MAY NOW OR IN THE FUTURE RECEIVE OR BE ENTITLED TO RECEIVE BY VIRTUE OF THE ENROLLMENT OR PARTICIPATION BY DEBTOR, BY DEBTOR'S BUSINESS, OR ANY OF DEBTOR'S REAL OR PERSONAL PROPERTY IN ANY PROGRAM OF ANY FEDERAL, STATE OR LOCAL GOVERNMENT OR AGENCY, INCLUDING WITHOUT LIMITATION, DEFICIENCY PAYMENTS, PAYMENT-IN-KIND PAYMENTS, COMMODITY CREDIT CORPORATION LOAN PAYMENTS, GOVERNMENT ENTITLEMENTS, AND ANY OTHER SIMILAR PAYMENTS, RIGHTS OR ENTITLEMENTS ALL MONIES OR INSTRUMENTS PERTAINING TO THE COLLATERAL DESCRIBED ABOVE; ALL ACCESSIONS, ACCESSORIES, ADDITIONS, AMENDMENTS, ATTACHEMENTS, MODIFICATIONS, REPLACEMENTS AND SUBSTITUTIONS TO ANY OF THE ABOVE; ALL PROCEEDS AND PRODUCTS OF ANY OF THE ABOVE ALL POLICIES OF INSURANCE PERTAINING TO THE COLLATERAL; AND ALL BOOKS AND RECORDS PERTAINING TO ANY OF THE ABOVE.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

Filed with: Secretary of State, TX      R. Hansen / CC: 3250131   3396477-100

**COMMERCIAL SECURITY AGREEMENT**
Officer: Ronnie Hansen

 **PlainsCapital** Bank

| LOAN NUMBER | AGREEMENT DATE | PROCESSOR | OFFICER |
|---|---|---|---|
| ███████ | January 19, 2024 | LL | Ronnie Hansen |

**BORROWER INFORMATION**
BYRON E WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

**COLLATERAL OWNER INFORMATION**

WALKER CUTTING HORSES, LLC
1206 DELMARVA CT
GRANBURY, TX 76048

**AGREEMENT.** "Agreement" means this Commercial Security Agreement.

**BORROWER.** "Borrower" means BYRON E WALKER.

**DEBTOR.** "Debtor" means BYRON E WALKER WALKER CUTTING HORSES, LLC.

**LENDER.** "Lender" means PlainsCapital Bank whose address is 1100 East Hwy 377, Suite 101, Granbury, Texas 76048, its successors and assigns.

**SECURITY INTEREST GRANT.** Debtor, in consideration of the Obligations, hereby agrees to all of the terms of this Agreement and further hereby specifically grants Lender a continuing security interest in the Collateral. Debtor further grants Lender a security interest in the proceeds of said Collateral; the proceeds of hazard insurance and eminent domain or condemnation awards involving the Collateral; all products of, substitutions, replacements, and accessions to such Collateral or interests therein; any and all deposits or other sums at any time credited by or due from Lender to Debtor; and any and all instruments, documents, policies, and certificates of insurance, securities, goods, accounts receivable, choses in action, chattel paper, cash, property, and the proceeds thereof (whether or not the same are Collateral or proceeds thereof hereunder), owned by Debtor or in which Debtor has an interest which are now or at any time hereafter in possession or control of Lender, or in transit by mail or carrier to or from Lender, or in possession of any third party acting on Lender's behalf, without regard to whether Lender received the same in pledge, for safekeeping, as agent or otherwise, or whether Lender has conditionally released the same. Debtor's grant of a continuing security interest in the Collateral secures to Lender the payment of all Obligations, including all renewals and extensions thereof, whether heretofore, now, or hereafter existing or arising and howsoever incurred or evidenced, whether primary, secondary, contingent, or otherwise.

**DESCRIPTION OF COLLATERAL.** The collateral covered by this Agreement (the "Collateral") is all of the Debtor's property described below which the Debtor now owns or may hereafter acquire or create and all proceeds and products thereof, whether tangible or intangible, including proceeds of insurance and which may include, but shall not be limited to, any items listed on any schedule or list attached hereto.

>    **Farm Products.** "Farm Products" shall consist of all Debtor's goods, other than standing timber, with respect to which Debtor is engaged in a farming operation and which are: (i) crops grown, growing, or to be grown, including but not limited to crops produced on plants, trees, vines, and bushes, and aquatic goods produced in aquacultural operations; (ii) livestock, born or unborn, including but not limited to aquatic goods produced in aquacultural operations; (iii) supplies used or produced in Debtor's farming operation; or (iv) products of crops or livestock in their unmanufactured states.

>    **Equipment.** "Equipment" shall consist of all goods of the Debtor that are not inventory, farm products, or consumer goods. Equipment includes, but is not limited to, all equipment and fixtures of every nature and description whatsoever, now owned or hereafter acquired by Debtor, wherever located, including all machinery, manufacturing equipment, shop equipment, furnishings, furniture, record keeping equipment, and vehicles, together with all accessions, parts, embedded software, attachments, accessories, tools, and dies, or appurtenances thereto intended for use in connection therewith, and all substitutions, betterments, and replacements thereof and additions thereto.

>    **Accounts.** "Accounts" consist of the Debtor's right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; (iv) for a secondary obligation incurred or to be incurred; (v) for energy provided or to be provided; (vi) for the use or hire of a vessel under a charter or other contract; (vii) arising out of the use of a credit card or charge card or information contained on or for use with the card; (viii) as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state; or (ix) for health-care-insurance receivables.

>    **General Intangibles.** "General Intangibles" shall consist of all personal property now owned or hereafter acquired by the Debtor, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, goods, instruments, investment property, letter of credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. General Intangibles shall also include all payment intangibles now held or hereafter acquired by Debtor and all software now owned or hereafter acquired by Debtor, which is not encompassed by the term "Goods," and all supporting information pertaining or relating thereto. General Intangibles include, but are not limited to, intellectual property, rights that arise under a license of intellectual property, including the right to exploit the intellectual property without liability for infringement, and the right to payment of a loan of funds that is not evidenced by chattel paper or an instrument.

>    **Specific Collateral.** "Specific" refers to the specific property, together with all related rights, described below.
>        SPECIFIC COLLATERAL DESCRIPTION: Three Cutting Horses (pregnant mares): (1) LEXUS SMOOTH - 2015 Sorrel Mare AQHA #5727284, (2) WR THISPLAYGUNSMART - 2016 Sorrel Mare AQHA #5764745, and (3) BAR NOTHING DANCER - 2018 Mare AQHA #5757228

**OBLIGATIONS.** "Obligations" means any and all of Borrower's obligations to Lender, whether they arise under this Agreement or the note, loan agreement, guaranty, or other evidence of debt executed in connection with this Agreement, or under any other mortgage, trust deed, deed of trust, security deed, security agreement, note, lease, instrument, contract, document, or other similar writing heretofore, now, or hereafter executed by the Borrower to Lender, including any renewals, extensions and modifications thereof, and including oral agreements and obligations arising by operation of law. The Obligations include all interest and all of Lender's costs, fees, and expenses recoverable pursuant to this Agreement, any other agreement between the parties, or under applicable law, including all such costs, fees, and expenses that may arise after the filing of any petition by or against Borrower or Debtor under the Bankruptcy Code, irrespective of whether the Obligations do not accrue because of an automatic stay.

**CROSS-COLLATERALIZATION.** Debtor agrees that any security interest provided in Collateral under this Agreement or any Collateral provided in connection with any and all other indebtedness of Debtor or Borrower to Lender, whether or not such indebtedness is related by

© 2004-2022 Compliance Systems, LLC 28461261-e3310516 - 2022.16.9.1
Commercial - Security Agreement DL4008

Page 1 of 5

www.compliancesystems.com



CSi

class or claim and whether or not contemplated by the parties at the time of executing each evidence of indebtedness, shall act as Collateral for all said indebtedness. This cross-collateralization provision shall not apply to any Collateral that is/are household goods or a principal dwelling.

**FUTURE ADVANCES AND AFTER-ACQUIRED PROPERTY.** Future advances may be made at any time by the Lender under this Agreement to the extent allowed by law. The security interest grant contained in this Agreement also applies to any Collateral of the type(s) identified in this Agreement that the Debtor acquires after this Agreement is executed, except that no security interest attaches to after-acquired consumer goods unless the Debtor acquires rights in such goods within 10 days of Lender giving value. In anticipation of future advances by Lender, the Debtor authorizes Lender to file any necessary financing statements to protect Lender's security interest.

**RELATED DOCUMENTS.** "Related Documents" means all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents, and any other documents or agreements executed in connection with this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**GENERAL REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Debtor represents, warrants, and covenants the following:

**Farming Operation.** Debtor is presently engaged in a farming operation with respect to all Collateral classified as Farm Equipment or Farm Products, including but not limited to raising, cultivating, propagating, fattening, grazing, or other farming livestock, or aquacultural operation, and Debtor will not discontinue Debtor's farming operation without prior written notification to Lender (Debtor's farming operation will hereinafter be included in the term "business" whenever said term is used in this Agreement to refer to Debtor's business).

**Debtor's Existence and Organization.** Debtor is fully formed and in good standing under all laws governing Debtor and Debtor's business. Debtor has or will provide Lender with documentation regarding Debtor's state of organization or formation, and Debtor further warrants that Debtor will not change Debtor's state of organization or formation without Lender's prior written consent. Debtor will assist Lender with any changes to any documents, filings, or other records resulting or required by any change in the Debtor's state of organization or formation. The execution of this Agreement will not create any breach of any provision of the Debtor's organizational documents.

**Authority.** Debtor has the power and authority to execute this Agreement and the Related Documents and to bind Debtor to the obligations created in this Agreement and the Related Documents. The execution of this Agreement will not create any breach of any other agreement to which the Debtor is or may become a party. Debtor has obtained all licenses, permits, and the like which Debtor is required by law to file or obtain, and all such taxes and fees for such licenses and permits required to be paid have been paid in full.

**Debtor's Name.** Debtor will not conduct business under any name other than that given at the beginning of this Agreement, nor change, nor reorganize the type of business entity as described, except upon the prior written approval of Lender, in which event the Debtor agrees to execute any documentation of whatsoever character or nature required by Lender for filing or recording, at the Debtor's expense, before such change occurs.

**Business Address.** Debtor will keep all records of account, documents, evidence of title, and all other documentation regarding its business and the Collateral at the address specified at the beginning of this Agreement, unless notice thereof is given to Lender at least ten (10) days prior to the change of any address for the keeping of such records.

**Title.** Debtor has or will acquire free and clear title to all of the Collateral, unless otherwise provided herein. All of the Collateral exists and is or will be actual property of the Debtor.

**No Encumbrances or Transfer of Collateral.** Debtor will not allow or permit any lien, security interest, adverse claim, charge, or encumbrance of any kind against the Collateral or any part thereof without Lender's prior written consent. Except as otherwise provided under this Agreement, Debtor will not, without Lender's prior written consent, sell assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein nor will Debtor offer to sell, assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein.

**Priority.** The security interest granted to Lender shall be a first security interest unless Lender specifically agrees otherwise, and Debtor will defend the same against the claims and demands of all persons.

**Facilitation of Security Interest.** Debtor will fully cooperate in placing, perfecting, and maintaining Lender's lien or security interest against or in the Collateral and Debtor agrees to take whatever actions requested by Lender to perfect and continue Lender's security interest in the Collateral. Debtor specifically authorizes the Lender to file the necessary financing statements to perfect the Lender's security interest in the Collateral.

**Location of Collateral.** All of the Collateral is located in the state where the Debtor is located, as identified in this Agreement, unless otherwise certified to and agreed to by Lender, or, alternatively, is in possession of the Lender. Debtor will not remove or change the location of any Collateral without Lender's prior written consent and will allow the Lender to inspect the Collateral upon reasonable request.

**Use of Collateral.** Debtor will use the Collateral only in the conduct of its own business, in a careful and proper manner. Debtor will not use the Collateral or permit it to be used for any unlawful purpose.

**Good Condition and Repair.** Debtor will, at all times, maintain the Collateral in good condition and repair.

**Financial Information and Filing.** All financial information and statements delivered by Debtor to Lender have been prepared in accordance with generally accepted accounting principles consistently applied, and fully and fairly present the financial condition of Debtor and there has been no material adverse change in Debtor's business, Collateral, or condition, either financial or otherwise, since Debtor last submitted any financial information to Lender. Debtor has filed all federal, state and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Debtor has made reasonable provision for these types of payments that are accrued but not yet payable. Debtor does not know of any deficiency or additional assessment not disclosed in the Debtor's books and records.

**No Litigation.** There are no existing or pending suits or proceedings, including set-off or counterclaim, which are threatened or pending against Debtor which may result in any material adverse change in Debtor's financial condition or which might materially affect any of the Collateral. Debtor will promptly notify Lender in writing of all threatened and actual litigation, governmental proceedings, default, and every other occurrence that may have a material adverse effect on Debtor's business, financial condition, or the Collateral.

**No Misrepresentations.** All representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**INSURANCE.** Debtor is required to: (1) keep the collateral insured against damage in the amount equal to or exceeding the Obligations; (2) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and (3) name Lender as the person to be paid under the policy in the event of a loss. Debtor must, if required by Lender, deliver to Lender a copy of the policy and proof of the payment of premiums. If Debtor fails to meet any requirement listed in this section, the creditor may obtain collateral protection insurance on behalf of Debtor at the Debtor's expense.

Lender is granted a security interest in the proceeds of such insurance and may apply such proceeds as it may receive toward the payment of the Obligations, whether or not due, in such order as the Lender may in its sole discretion determine. Debtor agrees to maintain, at its own expense, public liability and property damage insurance upon all its other property, to provide such policies in such form as the Lender may approve. All policies of insurance shall provide for a minimum 10 days' written notice of cancellation to Lender. Debtor agrees that Lender is authorized to act as attorney for Debtor in obtaining, adjusting, settling, and canceling such insurance and endorsing any drafts or instruments issued or

connected with such insurance. Debtor specifically authorizes Lender to disclose information obtained in conjunction with this Agreement and from policies of insurance to prospective insurers of the Collateral. Lender may, but is not required to, make payment or obtain insurance policies on the Collateral without waiving any default under this Agreement. All costs incurred by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges thereby incurred, shall become a part of the Obligations and shall be payable on demand. If requested by Lender, all insurance policies shall include a lender's loss payable endorsement.

**ACCOUNTS.** As of the time any account becomes subject to the security interest (or pledge or assignment as applicable) granted hereby, Debtor shall be deemed further to have warranted as to each and all of such accounts as follows: (a) each account and all papers and documents relating thereto are genuine and in all respects what they purport to be; (b) each account is valid and subsisting and arises out of a bona fide sale of goods sold and delivered to, or out of and for services theretofore actually rendered by Debtor to, the account debtor named in the account or other bona fide transaction; (c) the amount of the account represented as owing is the correct amount actually and unconditionally owing except for normal cash discounts and is not subject to any setoffs, credits, defenses, or countercharges; and (d) Debtor is the owner thereof free and clear of any charges, liens, security interests, adverse claims, and encumbrances of any and every nature whatsoever.

Lender shall have the right in its own name or in the name of the Debtor, whether before or after default, to require Debtor: (1) to transmit all proceeds of collection of accounts to Lender; (2) to notify any and all account debtors to make payments of the accounts directly to Lender; (3) to demand, collect, receive, receipt for, sue for, compound, and give acquittal for, any and all amounts due or to become due on the accounts and to endorse the name of the Debtor on all commercial paper given in payment or part payment thereof; and (4) in Lender's discretion, to file any claim or take any other action or proceeding that Lender may deem necessary or appropriate to protect and preserve and realize upon the accounts and related Collateral.

Unless and until Lender elects to collect accounts, and the privilege of Debtor to collect accounts is revoked by Lender in writing, Debtor shall continue to collect accounts, account for same to Lender, shall not commingle the proceeds of collections of accounts with any funds of the Debtor, and shall deposit such proceeds in an account with Lender. In order to assure collection of accounts in which Lender has an interest hereunder, Lender may notify the post office authorities to change the address for delivery of mail addressed to Debtor to such address as Lender may designate, open and dispose of such mail, and receive the collections of accounts included therewith. Lender shall have no duty or obligation whatsoever to collect any account or to take any other action or preserve or protect the Collateral; however, should Lender elect to collect any account or take possession of the Collateral, Debtor releases Lender from any claim or claims for loss or damage arising from any act or omission in connection therewith, and costs of collection incurred by Lender shall be an obligation secured hereby and constitute a portion of the Obligations.

Upon request by Lender, whether before or after default, Debtor shall take such action and execute and deliver such documents as Lender may reasonably request in order to identify, confirm, mark, segregate, and assign accounts and to evidence Lender's interest in same. Without limiting the foregoing Debtor, upon request, agrees to assign accounts to Lender, identify and mark accounts as being subject to the security interest for pledge (or assignment as applicable) granted hereby, mark Debtor's books and records to reflect such assignments, and forthwith to transmit to Lender in the form as received by Debtor any and all proceeds of collection of such accounts.

Debtor will deliver to Lender, prior to the 10th day of each month, or with such other frequency as Lender may request, a written report in form and content satisfactory to Lender, showing a listing and aging of accounts and such other information as Lender may request from time to time. Debtor shall immediately notify Lender of the assertion by any account debtor of any setoff, defense, or claim regarding an account or any other matter adversely affecting an account.

Returned or repossessed goods arising from or relating to any accounts included within the Collateral shall, if requested by Lender, be held separate and apart from any other property. Debtor, on request by Lender shall report to Lender identifying information with respect to any such goods relating to accounts included in transactions under this Agreement.

**ADDITIONAL COLLATERAL.** In the event that Lender should, at any time, determine that the Collateral or Lender's security interest in the Collateral is impaired, insufficient, or has declined or may decline in value, or if Lender should deem that payment of the Obligations is insecure, time being of the very essence, then Lender may require, and Debtor agrees to furnish, additional Collateral that is satisfactory to Lender. Lender shall provide notice as provided for in this Agreement to Debtor regarding additional Collateral. Lender's request for additional Collateral shall not affect any other subsequent right of Lender to request additional Collateral.

**FINANCING STATEMENT(S) AND LIEN PERFECTION.** Lender is authorized to file a conforming financing statement or statements to perfect its security interest in the Collateral, as provided in Revised Article 9, Uniform Commercial Code - Secured Transactions. Debtor agrees to provide such information, supplements, and other documents as Lender may from time to time require to supplement or amend such financing statement filings, in order to comply with applicable state or federal law and to preserve and protect the Lender's rights in the Collateral. The Debtor further grants the Lender a power of attorney to execute any and all documents necessary for the Lender to perfect or maintain perfection of its security interest in the Collateral, and to change or correct any error on any financing statement or any other document necessary for proper placement of a lien on any Collateral which is subject to this Agreement.

**LANDLORD'S WAIVER.** Upon request, Debtor shall furnish to Lender, in a form and upon such terms as are acceptable to Lender, a landlord's waiver of all liens with respect to any Collateral covered by this Agreement that is or may be located upon leased premises.

**RELATIONSHIP TO OTHER AGREEMENTS.** This Agreement and the security interests (and pledges and assignments, as applicable) herein granted are in addition to (and not in substitution, novation or discharge of) any and all prior or contemporaneous security agreements, security interest, pledges, assignments, mortgages, liens, rights, titles, or other interests in favor of Lender or assigned to Lender by others in connection with the Obligations. All rights and remedies of Lender in all such agreements are cumulative.

**TAXES, LIENS, ETC.** The Debtor agrees to pay all taxes, levies, judgments, assessments, and charges of any nature whatsoever relating to the Collateral or to the Debtor's business. If the Debtor fails to pay such taxes or other charges, the Lender, at its sole discretion, may pay such charges on behalf of the Debtor; and all sums so dispensed by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges relating thereto, shall become a part of the Obligations and shall be payable on demand.

**ENVIRONMENTAL HAZARDS.** Debtor certifies that the Collateral has never been, and so long as this Agreement continues to be a lien on the Collateral, never will be used in violation of any local, state or federal environmental laws, statutes or regulations or used for the generation, storage, manufacture, transportation, disposal, treatment, release or threatened release of any hazardous substances and Debtor will immediately notify Lender in writing of any assertion made by any party to the contrary.

DEBTOR INDEMNIFIES AND HOLDS LENDER AND LENDER'S DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS HARMLESS FROM ANY LIABILITY OR EXPENSE OF WHATSOEVER NATURE, INCLUDING REASONABLE ATTORNEYS' FEES, INCURRED DIRECTLY OR INDIRECTLY AS A RESULT OF DEBTOR'S INVOLVEMENT WITH HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCES AS MAY BE DEFINED OR REGULATED AS SUCH UNDER ANY LOCAL, STATE OR FEDERAL LAW OR REGULATION OR DEBTOR'S OWNERSHIP OR OCCUPATION OF ANY REAL ESTATE UPON WHICH ANY HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCE IS OR WAS PREVIOUSLY LOCATED.

**PROTECTION OF COLLATERAL.** Debtor agrees that Lender may, at Lender's sole option, whether before or after any event of default, and without prior notice to Debtor, take the following actions to protect Lender's interest in the Collateral: (a) pay for the maintenance, preservation, repair, improvement, or testing of the Collateral; (b) pay any filing, recording, registration, licensing, certification, or other fees and charges related to the Collateral; or (c) take any other action to preserve and protect the Collateral or Lender's rights and remedies under this Agreement, as Lender may deem necessary or appropriate from time to time. Debtor agrees that Lender is not obligated and has no duty whatsoever to take the foregoing actions. Debtor further agrees to reimburse Lender promptly upon demand for any payment made or any expenses incurred by Lender pursuant to this authorization. Payments and expenditures made by Lender under this authorization shall constitute additional Obligations, shall be secured by this Agreement, and shall bear interest thereon from the date incurred at the maximum rate of interest, including any default rate, if one is provided, as set forth in the notes secured by this obligation.

**INFORMATION AND REPORTING.** The Debtor agrees to supply to the Lender such financial and other information concerning its affairs and the status of any of its assets as the Lender, from time to time, may reasonably request. The Debtor further agrees to permit the Lender, its employees, and agents, to have access to the Collateral for the purpose of inspecting it, together with all of the Debtor's other physical assets, if any, and to permit the Lender, from time to time, to verify Accounts, if any, as well as to inspect, copy, and to examine the books, records, and files of the Debtor.

**DEFAULT.** The occurrence of any of the following events shall constitute a default of this Agreement: (a) the non-payment, when due (whether by acceleration of maturity or otherwise), of any amount payable on any of the Obligations or any extension or renewal thereof; (b) the failure to perform any agreement of the Debtor contained herein or in any other agreement Debtor has or may have with Lender; (c) the publication of any statement, representation, or warranty, whether written or oral, by the Debtor to the Lender, which at any time is untrue in any respect as of the date made; (d) the condition that any Debtor becomes insolvent or unable to pay debts as they mature, or makes an assignment for the benefit of the Debtor's creditors, or conveys substantially all of its assets, or in the event of any proceedings instituted by or against any Debtor alleging that such Debtor is insolvent or unable to pay debts as they mature (failure to pay being conclusive evidence of inability to pay); (e) Debtor makes application for appointment of a receiver or any other legal custodian, or in the event that a petition of any kind is filed under the Federal Bankruptcy Code by or against such Debtor and the resulting proceeding is not discharged within thirty days after filing; (f) the entry of any judgment against any Debtor, or the issue of any order of attachment, execution, sequestration, claim and delivery, or other order in the nature of a writ levied against the Collateral; (g) the death of any Debtor who is a natural person, or of any partner of any Debtor that is a partnership; (h) the dissolution, liquidation, suspension of normal business, termination of existence, business failure, merger, or consolidation or transfer of a substantial part of the property of any Debtor which is a corporation, limited liability company, partnership, or other non-individual business entity; (i) the Collateral or any part of the Collateral declines in value in excess of normal wear, tear, and depreciation or becomes, in the judgment of Lender, impaired, unsatisfactory, or insufficient in character or value, including but not limited to the filing of a competing financing statement; breach of warranty that the Debtor is the owner of the Collateral free and clear of any encumbrances (other than those encumbrances disclosed by Debtor or otherwise made known to Lender, and which were acceptable to Lender at the time); sale of the Collateral (except in the ordinary course of business) without Lender's express written consent; failure to keep the Collateral insured as provided herein; failure to allow Lender to inspect the Collateral upon demand or at reasonable time; failure to make prompt payment of taxes on the Collateral; loss, theft, substantial damage, or destruction of the Collateral; and, when Collateral includes inventory, accounts, chattel paper, or instruments, failure of account debtors to pay their obligations in due course; or (j) the Lender in good faith, believes the Debtor's ability to repay the Debtor's indebtedness secured by this Agreement, any Collateral, or the Lender's ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

**REMEDY.** Upon the occurrence of an event of default, Lender, at its option, shall be entitled to exercise any one or more of the remedies described in this Agreement, in all documents evidencing the Obligations, in any other agreements executed by or delivered by Debtor for benefit of Lender, in any third-party security agreement, mortgage, pledge, or guaranty relating to the Obligations, in the Uniform Commercial Code of the state of Texas, and all remedies at law and equity, all of which shall be deemed cumulative. The Debtor agrees that, whenever a default exists, all Obligations may (notwithstanding any provision in any other agreement), at the sole option and discretion of the Lender and without demand or notice of any kind, be declared, and thereupon immediately shall become due and payable; and the Lender may exercise, from time to time, any rights and remedies, including the right to immediate possession of the Collateral, available to it under applicable law. The Debtor agrees, in the case of default, to assemble, at its own expense, all Collateral at a convenient place acceptable to the Lender. The Lender shall, in the event of any default, have the right to take possession of and remove the Collateral, with or without process of law, and in doing so, may peacefully enter any premises where the Collateral may be located for such purpose. Debtor waives any right that Debtor may have, in such instance, to a judicial hearing prior to such retaking. The Lender shall have the right to hold any property then in or upon said Collateral at the time of repossession not covered by the security agreement until return is demanded in writing by Debtor. The Lender may sell, lease, or otherwise dispose of the Collateral, by public or private proceedings, for cash or credit, without assumption of credit risk. Unless the Collateral is perishable or threatens to decline speedily in value or of a type customarily sold on a recognized market, Lender will send Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition will be made. Any notification of intended disposition of the Collateral by the Lender shall be deemed to be reasonable and proper if sent United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means to the Debtor at least ten (10) days before such disposition, and addressed to the Debtor either at the address shown herein or at any other address provided to Lender in writing for the purpose of providing notice. Proceeds received by Lender from disposition of the Collateral may be applied toward Lender's expenses and other obligations in such order or manner as Lender may elect. Debtor shall be entitled to any surplus if one results after lawful application of the proceeds. If the proceeds from a sale of the Collateral are insufficient to extinguish the Obligations, the parties obligated thereon shall be liable for a deficiency. Lender shall have the right, whether before or after default, to collect and receipt for, compound, compromise, and settle, and give releases, discharges, and acquittances with respect to, any and all amounts owed by any person or entity with respect to the Collateral. Lender may remedy any default and may waive any default without waiving the default remedied and without waiving any other prior or subsequent default. The rights and remedies of the Lender are cumulative, and the exercise of any one or more of the rights or remedies shall not be deemed an election of rights or remedies or a waiver of any other right or remedy.

**EXERCISE OF LENDER'S RIGHTS.** Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, or under any other document executed by Debtor to the Lender in connection herewith, shall not operate as a waiver thereof, and no single or partial exercise thereof or any other power, privilege, or right shall preclude other or further exercise thereof. The waiver by the Lender of any default of the Debtor shall not constitute a waiver of subsequent default.

**CONTINUING AGREEMENT.** This is a continuing agreement and the security interest (and pledge and assignment, as applicable) hereby granted and all of the terms and provisions of this Agreement shall be deemed a continuing agreement and shall remain in full force and effect until the Obligations are paid in full. In the event that Lender should take additional Collateral, or enter into other security agreements, mortgages, guarantees, assignments, or similar documents with respect to the Obligations, or should Lender enter into other such agreements with respect to other obligations of Debtor, such agreements shall not discharge this Agreement, which shall be construed as cumulative and continuing and not alternative and exclusive.

Any attempted revocation or termination shall only be effective if explicitly confirmed in a signed writing issued by Lender to such effect and shall in no way impair or affect any transactions entered into or rights created or liabilities incurred or arising prior to such revocation or termination, as to which this Agreement shall be truly operative until same are repaid and discharged in full. Unless otherwise required by applicable law, Lender shall be under no obligation to issue a termination statement or similar document unless Debtor requests same in writing, and providing further, that all Obligations have been repaid and discharged in full and there are no commitments to make advances, incur any obligations, or otherwise give value.

**ABSENCE OF CONDITIONS OF LIABILITY.** This Agreement is unconditional. Lender shall not be required to exhaust its remedies against Debtor, other collateral, guarantors, or any third party, or pursue any other remedies within Lender's power before being entitled to exercise its remedies hereunder. Lender's rights to the Collateral shall not be altered by the lack of validity or enforceability of the Obligations against Debtor, and this Agreement shall be fully enforceable irrespective of any counterclaim which the Debtor may assert on the underlying debt and notwithstanding any stay, modification, discharge, or extension of Debtor's Obligation arising by virtue of Debtor's insolvency, bankruptcy, or reorganization, whether occurring with or without Lender's consent.

**NOTICES.** Any notice or demand given by Lender to Debtor in connection with this Agreement, the Collateral, or the Obligations, shall be deemed given and effective upon deposit in the United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means addressed to Debtor at the address designated at the beginning of this Agreement, or such other address as Debtor may provide to Lender in writing from time to time for such purposes. Actual notice to Debtor shall always be effective no matter how such notice is given or received.

**WAIVERS.** Debtor waives notice of Lender's acceptance of this Agreement, defenses based on suretyship, and to the fullest extent permitted by law, any defense arising as a result of any election by Lender under the Bankruptcy Code or the Uniform Commercial Code. Debtor and any

CSi

maker, endorser, guarantor, surety, third-party pledgor, and other party executing this Agreement that is liable in any capacity with respect to the Obligations hereby waive demand, notice of intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, and any other similar notice whatsoever. Debtor further waives any defense arising by reason of a disability or other defense of any third party or by reason of the cessation from any cause whatsoever of the liability of any third party.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Agreement shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; but, in the event any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity and shall be severed from the rest of this Agreement without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Debtor.

**ASSIGNABILITY.** Lender may assign, pledge, or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the Obligations, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Debtor may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**AUTHORIZATIONS.** Debtor authorizes Lender, without notice or demand and without altering Debtor's liability or Lender's rights hereunder, from time to time to take acts which may alter the Obligation of Debtor to Lender or Debtor's right to restitution or subrogation or both, including to the extent allowed by law:

(a) Renewing, compromising, extending, or otherwise changing the time for payment of, or otherwise changing the terms of the Obligations or any part thereof, including increasing the rate of interest;
(b) Extending additional credit to Debtor in any manner for any purpose;
(c) Incurring costs, including attorneys' fees, with respect to enforcing Lender's rights with respect to the Obligations, and Collateral securing the Obligations;
(d) Exchanging, enforcing, waiving, or releasing (whether intentionally or unintentionally) any security for the Obligations or any part thereof or purchase such security at private or public sale and to file any financing statements necessary for Lender to perfect or protect Lender's security interest;
(e) Settling, releasing, compromising with, or substituting any one or more endorsers, guarantors, or other obligors or the Obligations;
(f) Impairing the value of Lender's interest in Collateral through failure to obtain or maintain protection, failure to obtain or maintain recordation of an interest, or through failure to perform a duty owed to Debtor to preserve the Collateral; and
(g) Applying all monies received from Debtor and others or from Collateral in Lender's discretion without in any way being required to marshal assets.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Debtor agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Agreement or the relationship between the parties. Included in the fees that Lender may recover from Debtor are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the Collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth in any of the Related Documents.

**GOVERNING LAW.** This Agreement has been delivered in the State of Texas and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**COUNTERPARTS.** This Agreement may be executed by the parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of all obligations of Debtor.

**INTERPRETATION AND CONSTRUCTION.** Except as otherwise defined in this Agreement, all terms herein shall have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Texas. Any ambiguities between this Agreement and any loan agreement executed by the Debtor in conjunction with this Agreement shall be resolved using the provisions of the loan agreement, to the extent necessary to eliminate any such ambiguity.

**RELEASE OF LIABILITY.** Debtor releases Lender from any liability which might otherwise exist for any act or omission of Lender related to the collection of any debt secured by this Agreement or the disposal of any Collateral, except for the Lender's willful misconduct.

By signing this Agreement, Debtor acknowledges reading, understanding, and agreeing to all its provisions and receipt of a copy hereof.

WALKER CUTTING HORSES, LLC

By: BYRONE WALKER                    Date: 1/19/24
Its: MEMBER

**COMMERCIAL SECURITY AGREEMENT**
Officer: Ronnie Hansen

 **PlainsCapital**Bank

| LOAN NUMBER | AGREEMENT DATE | PROCESSOR | OFFICER |
|---|---|---|---|
| ███████ | January 19, 2024 | LL | Ronnie Hansen |

**BORROWER INFORMATION**
BYRON E WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

**COLLATERAL OWNER INFORMATION**

BYRON E WALKER
1206 DELMARVA CT
GRANBURY, TX 76048

**AGREEMENT.** "Agreement" means this Commercial Security Agreement.

**BORROWER.** "Borrower" means BYRON E WALKER.

**DEBTOR.** "Debtor" means BYRON E WALKER.

**LENDER.** "Lender" means PlainsCapital Bank whose address is 1100 East Hwy 377, Suite 101, Granbury, Texas 76048, its successors and assigns.

**SECURITY INTEREST GRANT.** Debtor, in consideration of the Obligations, hereby agrees to all of the terms of this Agreement and further hereby specifically grants Lender a continuing security interest in the Collateral. Debtor further grants Lender a security interest in the proceeds of said Collateral; the proceeds of hazard insurance and eminent domain or condemnation awards involving the Collateral; all products of, substitutions, replacements, and accessions to such Collateral or interests therein; any and all deposits or other sums at any time credited by or due from Lender to Debtor; and any and all instruments, documents, policies, and certificates of insurance, securities, goods, accounts receivable, choses in action, chattel paper, cash, property, and the proceeds thereof (whether or not the same are Collateral or proceeds thereof hereunder), owned by Debtor or in which Debtor has an interest which are now or at any time hereafter in possession or control of Lender, or in transit by mail or carrier to or from Lender, or in possession of any third party acting on Lender's behalf, without regard to whether Lender received the same in pledge, for safekeeping, as agent or otherwise, or whether Lender has conditionally released the same. Debtor's grant of a continuing security interest in the Collateral secures to Lender the payment of all Obligations, including all renewals and extensions thereof, whether heretofore, now, or hereafter existing or arising and howsoever incurred or evidenced, whether primary, secondary, contingent, or otherwise.

**DESCRIPTION OF COLLATERAL.** The collateral covered by this Agreement (the "Collateral") is all of the Debtor's property described below which the Debtor now owns or may hereafter acquire or create and all proceeds and products thereof, whether tangible or intangible, including proceeds of insurance and which may include, but shall not be limited to, any items listed on any schedule or list attached hereto.

> **Titled Vehicle.** "Titled Vehicle" consists of any and all vehicle(s) and all additions and accessions to the vehicle(s), and any replacements and substitutions of the vehicle(s). It also includes all documents of title related to the vehicle(s) as well as all products, rents, and proceeds of the vehicle(s).
>
>     TITLED VEHICLES DESCRIPTION:
>       • 2022 RAM 3500 DUALLY PICKUP, VIN 3C63RRMLXNG195059
>       • 2023 LAKOTA C8313SR, VIN 58JGX3H23P1000455

**OBLIGATIONS.** "Obligations" means any and all of Borrower's obligations to Lender, whether they arise under this Agreement or the note, loan agreement, guaranty, or other evidence of debt executed in connection with this Agreement, or under any other mortgage, trust deed, deed of trust, security deed, security agreement, note, lease, instrument, contract, document, or other similar writing heretofore, now, or hereafter executed by the Borrower to Lender, including any renewals, extensions and modifications thereof, and including oral agreements and obligations arising by operation of law. The Obligations include all interest and all of Lender's costs, fees, and expenses recoverable pursuant to this Agreement, any other agreement between the parties, or under applicable law, including all such costs, fees, and expenses that may arise after the filing of any petition by or against Borrower or Debtor under the Bankruptcy Code, irrespective of whether the Obligations do not accrue because of an automatic stay.

**CROSS-COLLATERALIZATION.** Debtor agrees that any security interest provided in Collateral under this Agreement or any Collateral provided in connection with any and all other indebtedness of Debtor to Lender, whether or not such indebtedness is related by class or claim and whether or not contemplated by the parties at the time of executing each evidence of indebtedness, shall act as Collateral for all said indebtedness. This cross-collateralization provision shall not apply to any Collateral that is/are household goods or a principal dwelling.

**FUTURE ADVANCES AND AFTER-ACQUIRED PROPERTY.** Future advances may be made at any time by the Lender under this Agreement to the extent allowed by law. The security interest grant contained in this Agreement also applies to any Collateral of the type(s) identified in this Agreement that the Debtor acquires after this Agreement is executed, except that no security interest attaches to after-acquired consumer goods unless the Debtor acquires rights in such goods within 10 days of Lender giving value. In anticipation of future advances by Lender, the Debtor authorizes Lender to file any necessary financing statements to protect Lender's security interest.

**RELATED DOCUMENTS.** "Related Documents" means all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents, and any other documents or agreements executed in connection with this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**GENERAL REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Debtor represents, warrants, and covenants the following:

> **Authority.** Debtor has the power and authority to execute this Agreement and the Related Documents and to bind Debtor to the obligations created in this Agreement and the Related Documents. The execution of this Agreement will not create any breach of any other agreement to which the Debtor is or may become a party. Debtor has obtained all licenses, permits, and the like which Debtor is required by law to file or obtain, and all such taxes and fees for such licenses and permits required to be paid have been paid in full.
>
> **Debtor's Name.** Debtor will not conduct business under any name other than that given at the beginning of this Agreement, nor change, nor reorganize the type of business entity as described, except upon the prior written approval of Lender, in which event the Debtor agrees to execute any documentation of whatsoever character or nature required by Lender for filing or recording, at the Debtor's expense, before such change occurs. Debtor has or will provide to Lender Debtor's full legal name as well as a copy of Debtor's driver's license, if one has been issued to Debtor, or if no driver's license has been issued to Debtor, Debtor will provide another form of

© 2004-2022 Compliance Systems, LLC 28461261-47d0785c - 2022.16.9.1
Commercial - Security Agreement DL4008                                          Page 1 of 4                                          www.compliancesystems.com

                                                                                                          CSi

identification issued by a governmental authority which is acceptable to Lender. Debtor will not change Debtor's legal name without providing Lender with at least 30 days' notice of the change.

**Business Address.** Debtor will keep all records of account, documents, evidence of title, and all other documentation regarding its business and the Collateral at the address specified at the beginning of this Agreement, unless notice thereof is given to Lender at least ten (10) days prior to the change of any address for the keeping of such records.

**Title.** Debtor has or will acquire free and clear title to all of the Collateral, unless otherwise provided herein. All of the Collateral exists and is or will be actual property of the Debtor.

**No Encumbrances or Transfer of Collateral.** Debtor will not allow or permit any lien, security interest, adverse claim, charge, or encumbrance of any kind against the Collateral or any part thereof without Lender's prior written consent. Except as otherwise provided under this Agreement, Debtor will not, without Lender's prior written consent, sell assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein nor will Debtor offer to sell, assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein.

**Priority.** The security interest granted to Lender shall be a first security interest unless Lender specifically agrees otherwise, and Debtor will defend the same against the claims and demands of all persons.

**Facilitation of Security Interest.** Debtor will fully cooperate in placing, perfecting, and maintaining Lender's lien or security interest against or in the Collateral and Debtor agrees to take whatever actions requested by Lender to perfect and continue Lender's security interest in the Collateral. Debtor specifically authorizes the Lender to file the necessary financing statements to perfect the Lender's security interest in the Collateral.

**Location of Collateral.** All of the Collateral is located in the state where the Debtor is located, as identified in this Agreement, unless otherwise certified to and agreed to by Lender, or, alternatively, is in possession of the Lender. Debtor will not remove or change the location of any Collateral without Lender's prior written consent and will allow the Lender to inspect the Collateral upon reasonable request.

**Use of Collateral.** Debtor will use the Collateral only in the conduct of its own business, in a careful and proper manner. Debtor will not use the Collateral or permit it to be used for any unlawful purpose.

**Good Condition and Repair.** Debtor will, at all times, maintain the Collateral in good condition and repair.

**Financial Information and Filing.** All financial information and statements delivered by Debtor to Lender have been prepared in accordance with generally accepted accounting principles consistently applied, and fully and fairly present the financial condition of Debtor and there has been no material adverse change in Debtor's business, Collateral, or condition, either financial or otherwise, since Debtor last submitted any financial information to Lender. Debtor has filed all federal, state and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Debtor has made reasonable provision for these types of payments that are accrued but not yet payable. Debtor does not know of any deficiency or additional assessment not disclosed in the Debtor's books and records.

**No Litigation.** There are no existing or pending suits or proceedings, including set-off or counterclaim, which are threatened or pending against Debtor which may result in any material adverse change in Debtor's financial condition or which might materially affect any of the Collateral. Debtor will promptly notify Lender in writing of all threatened and actual litigation, governmental proceedings, default, and every other occurrence that may have a material adverse effect on Debtor's business, financial condition, or the Collateral.

**No Misrepresentations.** All representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**INSURANCE.** Debtor is required to: (1) keep the collateral insured against damage in the amount equal to or exceeding the Obligations; (2) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and (3) name Lender as the person to be paid under the policy in the event of a loss. Debtor must, if required by Lender, deliver to Lender a copy of the policy and proof of the payment of premiums. If Debtor fails to meet any requirement listed in this section, the creditor may obtain collateral protection insurance on behalf of Debtor at the Debtor's expense.

Lender is granted a security interest in the proceeds of such insurance and may apply such proceeds as it may receive toward the payment of the Obligations, whether or not due, in such order as the Lender may in its sole discretion determine. Debtor agrees to maintain, at its own expense, public liability and property damage insurance upon all its other property, to provide such policies in such form as the Lender may approve. All policies of insurance shall provide for a minimum 10 days' written notice of cancellation to Lender. Debtor agrees that Lender is authorized to act as attorney for Debtor in obtaining, adjusting, settling, and canceling such insurance and endorsing any drafts or instruments issued or connected with such insurance. Debtor specifically authorizes Lender to disclose information obtained in conjunction with this Agreement and from policies of insurance to prospective insurers of the Collateral. Lender may, but is not required to, make payment or obtain insurance policies on the Collateral without waiving any default under this Agreement. All costs incurred by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges thereby incurred, shall become a part of the Obligations and shall be payable on demand. If requested by Lender, all insurance policies shall include a lender's loss payable endorsement.

**ADDITIONAL COLLATERAL.** In the event that Lender should, at any time, determine that the Collateral or Lender's security interest in the Collateral is impaired, insufficient, or has declined or may decline in value, or if Lender should deem that payment of the Obligations is insecure, time being of the very essence, then Lender may require, and Debtor agrees to furnish, additional Collateral that is satisfactory to Lender. Lender shall provide notice as provided for in this Agreement to Debtor regarding additional Collateral. Lender's request for additional Collateral shall not affect any other subsequent right of Lender to request additional Collateral.

**FINANCING STATEMENT(S) AND LIEN PERFECTION.** Lender is authorized to file a conforming financing statement or statements to perfect its security interest in the Collateral, as provided in Revised Article 9, Uniform Commercial Code - Secured Transactions. Debtor agrees to provide such information, supplements, and other documents as Lender may from time to time require to supplement or amend such financing statement filings, in order to comply with applicable state or federal law and to preserve and protect the Lender's rights in the Collateral. The Debtor further grants the Lender a power of attorney to execute any and all documents necessary for the Lender to perfect or maintain perfection of its security interest in the Collateral, and to change or correct any error on any financing statement or any other document necessary for proper placement of a lien on any Collateral which is subject to this Agreement.

**LANDLORD'S WAIVER.** Upon request, Debtor shall furnish to Lender, in a form and upon such terms as are acceptable to Lender, a landlord's waiver of all liens with respect to any Collateral covered by this Agreement that is or may be located upon leased premises.

**RELATIONSHIP TO OTHER AGREEMENTS.** This Agreement and the security interests (and pledges and assignments, as applicable) herein granted are in addition to (and not in substitution, novation or discharge of) any and all prior or contemporaneous security agreements, security interest, pledges, assignments, mortgages, liens, rights, titles, or other interests in favor of Lender or assigned to Lender by others in connection with the Obligations. All rights and remedies of Lender in all such agreements are cumulative.

**TAXES, LIENS, ETC.** The Debtor agrees to pay all taxes, levies, judgments, assessments, and charges of any nature whatsoever relating to the Collateral or to the Debtor's business. If the Debtor fails to pay such taxes or other charges, the Lender, at its sole discretion, may pay such charges on behalf of the Debtor; and all sums so dispensed by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges relating thereto, shall become a part of the Obligations and shall be payable on demand.

**ENVIRONMENTAL HAZARDS.** Debtor certifies that the Collateral has never been, and so long as this Agreement continues to be a lien on the Collateral, never will be used in violation of any local, state or federal environmental laws, statutes or regulations or used for the generation,

CSi

storage, manufacture, transportation, disposal, treatment, release or threatened release of any hazardous substances and Debtor will immediately notify Lender in writing of any assertion made by any party to the contrary.

DEBTOR INDEMNIFIES AND HOLDS LENDER AND LENDER'S DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS HARMLESS FROM ANY LIABILITY OR EXPENSE OF WHATSOEVER NATURE, INCLUDING REASONABLE ATTORNEYS' FEES, INCURRED DIRECTLY OR INDIRECTLY AS A RESULT OF DEBTOR'S INVOLVEMENT WITH HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCES AS MAY BE DEFINED OR REGULATED AS SUCH UNDER ANY LOCAL, STATE OR FEDERAL LAW OR REGULATION OR DEBTOR'S OWNERSHIP OR OCCUPATION OF ANY REAL ESTATE UPON WHICH ANY HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCE IS OR WAS PREVIOUSLY LOCATED.

**PROTECTION OF COLLATERAL.** Debtor agrees that Lender may, at Lender's sole option, whether before or after any event of default, and without prior notice to Debtor, take the following actions to protect Lender's interest in the Collateral: (a) pay for the maintenance, preservation, repair, improvement, or testing of the Collateral; (b) pay any filing, recording, registration, licensing, certification, or other fees and charges related to the Collateral; or (c) take any other action to preserve and protect the Collateral or Lender's rights and remedies under this Agreement, as Lender may deem necessary or appropriate from time to time. Debtor agrees that Lender is not obligated and has no duty whatsoever to take the foregoing actions. Debtor further agrees to reimburse Lender promptly upon demand for any payment made or any expenses incurred by Lender pursuant to this authorization. Payments and expenditures made by Lender under this authorization shall constitute additional Obligations, shall be secured by this Agreement, and shall bear interest thereon from the date incurred at the maximum rate of interest, including any default rate, if one is provided, as set forth in the notes secured by this obligation.

**INFORMATION AND REPORTING.** The Debtor agrees to supply to the Lender such financial and other information concerning its affairs and the status of any of its assets as the Lender, from time to time, may reasonably request. The Debtor further agrees to permit the Lender, its employees, and agents, to have access to the Collateral for the purpose of inspecting it, together with all of the Debtor's other physical assets, if any, and to permit the Lender, from time to time, to verify Accounts, if any, as well as to inspect, copy, and to examine the books, records, and files of the Debtor.

**DEFAULT.** The occurrence of any of the following events shall constitute a default of this Agreement: (a) the non-payment, when due (whether by acceleration of maturity or otherwise), of any amount payable on any of the Obligations or any extension or renewal thereof; (b) the failure to perform any agreement of the Debtor contained herein or in any other agreement Debtor has or may have with Lender; (c) the publication of any statement, representation, or warranty, whether written or oral, by the Debtor to the Lender, which at any time is untrue in any respect as of the date made; (d) the condition that any Debtor becomes insolvent or unable to pay debts as they mature, or makes an assignment for the benefit of the Debtor's creditors, or conveys substantially all of its assets, or in the event of any proceedings instituted by or against any Debtor alleging that such Debtor is insolvent or unable to pay debts as they mature (failure to pay being conclusive evidence of inability to pay); (e) Debtor makes application for appointment of a receiver or any other legal custodian, or in the event that a petition of any kind is filed under the Federal Bankruptcy Code by or against such Debtor and the resulting proceeding is not discharged within thirty days after filing; (f) the entry of any judgment against any Debtor, or the issue of any order of attachment, execution, sequestration, claim and delivery, or other order in the nature of a writ levied against the Collateral; (g) the death of any Debtor who is a natural person, or of any partner of any Debtor that is a partnership; (h) the dissolution, liquidation, suspension of normal business, termination of existence, business failure, merger, or consolidation or transfer of a substantial part of the property of any Debtor which is a corporation, limited liability company, partnership, or other non-individual business entity; (i) the Collateral or any part of the Collateral declines in value in excess of normal wear, tear, and depreciation or becomes, in the judgment of Lender, impaired, unsatisfactory, or insufficient in character or value, including but not limited to the filing of a competing financing statement; breach of warranty that the Debtor is the owner of the Collateral free and clear of any encumbrances (other than those encumbrances disclosed by Debtor or otherwise made known to Lender, and which were acceptable to Lender at the time); sale of the Collateral (except in the ordinary course of business) without Lender's express written consent; failure to keep the Collateral insured as provided herein; failure to allow Lender to inspect the Collateral upon demand or at reasonable time; failure to make prompt payment of taxes on the Collateral; loss, theft, substantial damage, or destruction of the Collateral; and, when Collateral includes inventory, accounts, chattel paper, or instruments, failure of account debtors to pay their obligations in due course; or (j) the Lender in good faith, believes the Debtor's ability to repay the Debtor's indebtedness secured by this Agreement, any Collateral, or the Lender's ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

**REMEDY.** Upon the occurrence of an event of default, Lender, at its option, shall be entitled to exercise any one or more of the remedies described in this Agreement, in all documents evidencing the Obligations, in any other agreements executed by or delivered by Debtor for benefit of Lender, in any third-party security agreement, mortgage, pledge, or guaranty relating to the Obligations, in the Uniform Commercial Code of the state of Texas, and all remedies at law and equity, all of which shall be deemed cumulative. The Debtor agrees that, whenever a default exists, all Obligations may (notwithstanding any provision in any other agreement), at the sole option and discretion of the Lender and without demand or notice of any kind, be declared, and thereupon immediately shall become due and payable; and the Lender may exercise, from time to time, any rights and remedies, including the right to immediate possession of the Collateral, available to it under applicable law. The Debtor agrees, in the case of default, to assemble, at its own expense, all Collateral at a convenient place acceptable to the Lender. The Lender shall, in the event of any default, have the right to take possession of and remove the Collateral, with or without process of law, and in doing so, may peacefully enter any premises where the Collateral may be located for such purpose. Debtor waives any right that Debtor may have, in such instance, to a judicial hearing prior to such retaking. The Lender shall have the right to hold any property then in or upon said Collateral at the time of repossession not covered by the security agreement until return is demanded in writing by Debtor. The Lender may sell, lease, or otherwise dispose of the Collateral, by public or private proceedings, for cash or credit, without assumption of credit risk. Unless the Collateral is perishable or threatens to decline speedily in value or of a type customarily sold on a recognized market, Lender will send Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition will be made. Any notification of intended disposition of the Collateral by the Lender shall be deemed to be reasonable and proper if sent United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means to the Debtor at least ten (10) days before such disposition, and addressed to the Debtor either at the address shown herein or at any other address provided to Lender in writing for the purpose of providing notice. Proceeds received by Lender from disposition of the Collateral may be applied toward Lender's expenses and other obligations in such order or manner as Lender may elect. Debtor shall be entitled to any surplus if one results after lawful application of the proceeds. If the proceeds from a sale of the Collateral are insufficient to extinguish the Obligations, the parties obligated thereon shall be liable for a deficiency. Lender shall have the right, whether before or after default, to collect and receipt for, compound, compromise, and settle, and give releases, discharges, and acquittances with respect to, any and all amounts owed by any person or entity with respect to the Collateral. Lender may remedy any default and may waive any default without waiving the default remedied and without waiving any other prior or subsequent default. The rights and remedies of the Lender are cumulative, and the exercise of any one or more of the rights or remedies shall not be deemed an election of rights or remedies or a waiver of any other right or remedy.

**EXERCISE OF LENDER'S RIGHTS.** Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, or under any other document executed by Debtor to the Lender in connection herewith, shall not operate as a waiver thereof, and no single or partial exercise thereof or of any other power, privilege, or right shall preclude other or further exercise thereof. The waiver by the Lender of any default of the Debtor shall not constitute a waiver of subsequent default.

**CONTINUING AGREEMENT.** This is a continuing agreement and the security interest (and pledge and assignment, as applicable) hereby granted and all of the terms and provisions of this Agreement shall be deemed a continuing agreement and shall remain in full force and effect until the Obligations are paid in full. In the event that Lender should take additional Collateral, or enter into other security agreements, mortgages, guarantees, assignments, or similar documents with respect to the Obligations, or should Lender enter into other such agreements with respect to other obligations of Debtor, such agreements shall not discharge this Agreement, which shall be construed as cumulative and continuing and not alternative and exclusive.

Any attempted revocation or termination shall only be effective if explicitly confirmed in a signed writing issued by Lender to such effect and shall in no way impair or affect any transactions entered into or rights created or liabilities incurred or arising prior to such revocation or

termination, as to which this Agreement shall be truly operative until same are repaid and discharged in full. Unless otherwise required by applicable law, Lender shall be under no obligation to issue a termination statement or similar document unless Debtor requests same in writing, and providing further, that all Obligations have been repaid and discharged in full and there are no commitments to make advances, incur any obligations, or otherwise give value.

**ABSENCE OF CONDITIONS OF LIABILITY.** This Agreement is unconditional. Lender shall not be required to exhaust its remedies against Debtor, other collateral, guarantors, or any third party, or pursue any other remedies within Lender's power before being entitled to exercise its remedies hereunder. Lender's rights to the Collateral shall not be altered by the lack of validity or enforceability of the Obligations against Debtor, and this Agreement shall be fully enforceable irrespective of any counterclaim which the Debtor may assert on the underlying debt and notwithstanding any stay, modification, discharge, or extension of Debtor's Obligation arising by virtue of Debtor's insolvency, bankruptcy, or reorganization, whether occurring with or without Lender's consent.

**NOTICES.** Any notice or demand given by Lender to Debtor in connection with this Agreement, the Collateral, or the Obligations, shall be deemed given and effective upon deposit in the United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means addressed to Debtor at the address designated at the beginning of this Agreement, or such other address as Debtor may provide to Lender in writing from time to time for such purposes. Actual notice to Debtor shall always be effective no matter how such notice is given or received.

**WAIVERS.** Debtor waives notice of Lender's acceptance of this Agreement, defenses based on suretyship, and to the fullest extent permitted by law, any defense arising as a result of any election by Lender under the Bankruptcy Code or the Uniform Commercial Code. Debtor and any maker, endorser, guarantor, surety, third-party pledgor, and other party executing this Agreement that is liable in any capacity with respect to the Obligations hereby waive demand, notice of intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, and any other similar notice whatsoever. Debtor further waives any defense arising by reason of a disability or other defense of any third party or by reason of the cessation from any cause whatsoever of the liability of any third party.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Agreement shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; but, in the event any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity and shall be severed from the rest of this Agreement without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Debtor.

**ASSIGNABILITY.** Lender may assign, pledge, or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the Obligations, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Debtor may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Debtor agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Agreement or the relationship between the parties. Included in the fees that Lender may recover from Debtor are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the Collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth in any of the Related Documents.

**GOVERNING LAW.** This Agreement has been delivered in the State of Texas and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**COUNTERPARTS.** This Agreement may be executed by the parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of all obligations of Debtor.

**INTERPRETATION AND CONSTRUCTION.** Except as otherwise defined in this Agreement, all terms herein shall have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Texas. Any ambiguities between this Agreement and any loan agreement executed by the Debtor in conjunction with this Agreement shall be resolved using the provisions of the loan agreement, to the extent necessary to eliminate any such ambiguity.

**RELEASE OF LIABILITY.** Debtor releases Lender from any liability which might otherwise exist for any act or omission of Lender related to the collection of any debt secured by this Agreement or the disposal of any Collateral, except for the Lender's willful misconduct.

By signing this Agreement, Debtor acknowledges reading, understanding, and agreeing to all its provisions and receipt of a copy hereof.

_____   1/19/24
BYRON E WALKER                           Date
Individually

© 2004-2022 Compliance Systems, LLC 28461261-47d0785c - 2022.16.9.1
Commercial - Security Agreement DL4008          Page 4 of 4          www.compliancesystems.com

CSI

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

014823 - 016555

RECEIVED

FEB 2 1 2024

J. ROPER

PLAINSCAPITAL BANK
PO BOX 93600
LUBBOCK, TX 79493

▼ DETACH HERE ▼



## TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

175414524

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 3C63RRMLXNG195059 | 2022 | RAM | PK |

| | TITLE/DOCUMENT NUMBER | DATE TITLE ISSUED |
|---|---|---|
| | 1113014532214534702/10/2024 | |

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| 350 | 8000 | GREN83 | |

PREVIOUS OWNER
BYRON EARL WALKER GRANBURY TX

ODOMETER READING
789

OWNER
BYRON EARL WALKER
1206 DELMARVA CT
GRANBURY, TX 76048-4372

REMARK(S)
ACTUAL MILEAGE
DIESEL

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN
THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE
INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN          1ST LIENHOLDER
01/19/2024 PLAINSCAPITAL BANK
           PO BOX 93600
           LUBBOCK, TX 79493

1ST LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN          2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN          3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER
OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY
AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS
CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY,
AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE
AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE _____ DATE
SIGNATURE _____ DATE
SIGNATURE _____ DATE

FORM 30-C REV. 05/2010          DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification online** at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**      17541452 4

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)

Date of Sale

Signature of Seller/Agent     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)